CITY OF INDEPENDENCE to the use of THE PARKER-WASHINGTON COMPANY, etc., Appellants, v. JOHN H. KNOEPKER et al., Respondents.

Kansas City Court of Appeals, December 7, 1908.

SPECIAL TAXBILLS: Ordinance: Specifications: "Formula:" Bidding. An ordinance for street paving referred to specifications on file in the city clerk's office for the character of the work which made such specifications a part of the ordinance. Specifications required the bids to be accompanied by a formula describing the character and composition of the asphaltum surface of the paved street which formula was to become a part of the specifications. *Held,* the formula for the asphaltum surface not being in existence at the passage of the ordinance could not be adopted by it and become a part thereof and that competition in the bidding was prevented, and the fact that no harm was done cannot remedy the defect and the taxbills issued for such work were invalid.

Appeal from Jackson Circuit Court.—*Hon. J. V. C. Karnes,* Special Judge.

AFFIRMED.

*Ball & Ryland* for appellants.

(1) The original ordinance adopted the specifications on file with the city clerk and thereby they became a part of it and the ordinance should be construed as if they were embodied in it. Galbreath v. Newton, 30 Mo. App. 380; Dickey v. Holmes, 109 Mo. App. 721; Paving Co. v. Ullman, 137 Mo. 543. (2) So construing the

ordinance, the bills would be valid if the work were completed within a reasonable time, even though no extension of time had been made.   Heman v. Gilliam, 171 Mo. 258; Schibel v. Merrill, 185 Mo. 534; Allen v. Labsap, 188 Mo. 692.   (3)   The fact, if it was a fact, that the part of the specifications denominated "general" were not on file when the ordinance was passed could not operate to defeat the bills because no such defense was pleaded.   Vieths v. Property Co., 64 Mo. App. 207; Carthage ex rel. v. Badgley, 73 Mo. App. 123; Construction Co. v. Hutchison, 100 Mo. App. 294; Bridewell v. Cockrell, 122 Mo. App. 196 (202).

*James M. Callahan* and *Flournoy & Flournoy* for respondents.

(1)   The ordinance by itself is of course, insufficient, in that it does not describe the kind of paving to be made, but it attempts to make itself sufficient by reference to certain specifications which are shown in the abstract.   Those specifications were incomplete as to the kind and quality of the wearing surface of the pavement, and they left it to bidders to say what kind of wearing surface should be made.   The successful bidder supplemented and completed the specifications before he executed the contract by attaching to the specifications the formula shown in abstract.   The formula attached to the specifications was not part of the ordinance as it was not in existence at the date of the ordinance, hence the ordinance did not properly describe the pavement to be made and was void.   Dickey v. Holmes, 109 Mo. App. 721; Galbreath v. Newton, 30 Mo. App. 380; Rich Hill v. Donovan, 82 Mo. App. 386; Boonville v. Stephens, 95 S. W. 314.

ELLISON, J.—The defendants are property-owners in Independence, a city of the third class.   The city undertook to pave a part of one of its streets on which

defendants' property abutted. The paving was done and taxbills issued against abutting property, which included that in suit. The trial court rendered judgment for the defendants.

There are several reasons advanced by defendants why the bills are invalid. It will not be necessary to notice more than one, and that is the claim that the work and material for the paving was not provided for by an ordinance, and, in consequence, the contract let was not the result of competition. It appears that an ordinance was passed for the paving, to be done "with asphalt on concrete foundation in accordance with the specifications prepared by the city engineer for this work, on file in the office of the city clerk." No objection is taken to the fact that the ordinance did not embody on its face the character, dimensions and material of the work. It is conceded that an ordinance may adopt specifications as a part of itself, which are at the time of the adoption of the ordinance on file in some place designated in the ordinance. [Galbreath v. Newton, 30 Mo. App. 380.] In that manner they become a part of the ordinance. But the complaint here is that the specifications on file with the city clerk did not designate the main and principal part of the paving, nor its mode of construction; that they, on their face, left that to future specifications to be submitted by the bidders in the shape of what is called a "formula." The specifications on file with the clerk and which became a part of the ordinance, prescribed how the concrete should be made and of what particular materials and the proportions thereof. They then specified of what the binder course should be composed and in what proportions. After thus providing for the foundation of the pavement, the specifications proceeded to specify that:

"(4) If the American Bituminous Rock Asphalt is used, the binder course to be omitted and a sufficient amount of the hydraulic concrete used to bring the sur-

face of the concrete two (2) inches below and parallel with the finished surface of the. pavement."

"(5)    Upon the foundation thus prepared, there shall be placed an asphalt wearing surface not less than two (2) inches in thickness when thoroughly compressed, which shall be manufactured and made strictly in accordance with the formula accompanying the proposal."

This was followed by the specification that this two inch asphaltum paving surface "shall be laid substantially according to the formula accompanying the proposal, which shall in each case be treated as a part of the specifications and contract."

The formula for the pavement, thus made a part of the specifications, was made up of the following specifications:

"Upon this concrete base will be laid the wearing surface or pavement proper, the matrix or binding material of which is a cement prepared with Trinidad asphaltum of the best quality obtained from the island of Trinidad, and heavy petroleum oil, unmixed with any of the products of coal tar.

"The heavy petroleum oil; the residuum obtained by distillation of petroleum—will be free from water, light oils, and other objectionable impurities, and specific gravity 18 degrees to 23 degrees Beaume, and will bear a fire test of 350 degrees Fahr.

"The Trinidad Asphaltum will be carefully refined and brought to a uniform standard of purity and gravity.

"The refined asphalt and petroleum residuum will be mixed in the following ratio by weight: The refined asphalt, 100 parts; heavy petroleum oil, 13 parts. But this ratio may be varied according to circumstances, as may be necessary to secure the best practical result.

"The pavement mixture, or wearing surface will be composed of: Asphaltic Cement, 12 to 16 per cent;

clear selected sand, 57 to 73 per cent; pulverized carbonate of lime, 15 to 17 per cent; 100 to 100.

"In order to make the pavement uniform and to secure the best results the proportion of asphaltic cement may be varied according to the quality and character of the sand.

"The proportion of carbonate of lime may be reduced, or it may be omitted entirely, when suitable sand can be obtained.

"The sand and asphaltic cement are to be heated separately to about 300 degrees Fahr. The pulverized carbonate of lime while cold, will be mixed with the hot sand, in the required proportions, and will then be mixed with the asphaltic cement at the required temperature, and in the proper proportion, in an apparatus suited to effect a perfect mixture.

"The pavement mixture thus prepared will be laid on the foundation. The first binder course per specification, the second, called the surface coat, prepared as above specified will be laid on the binder coat; it will be brought to the ground in carts at a temperature of about 250 degrees Fahr.; it will then be carefully spread by means of iron rakes in such a manner as to give a uniform and regular grade of two (2) inches.

"The surface will then be compressed by a hand roller, after which a small amount of hydraulic cement will be swept over it, and it will then be thoroughly compressed by a heavy steam roller, the rolling to be continued as long as it makes an impression on the surface."

It thus appears that the specifications for an important, if not the principal, part of the paving, viz: the asphaltum surface, were not in existence when the ordinance was passed and could not have been provided by the ordinance. [Dickey v. Holmes, 109 Mo. App. 721.] The city council did not provide the material or character of work for the paving. That vital particular was not considered by that body when it passed the ordinance. It is true that this formula, or additional specifi-

cations, attempts to make itself a part of the original specifications and thus become a part of those adopted by the ordinance. That, of course, could not be done. [Dickey v. Holmes, supra.]

More than this, there was never any competition for the paving, as let. This for the simple reason that the particular work and material to be required, was not known until the bid was made. Who can say that others than plaintiffs would not have done the work for less? What opportunity had the public to compete for the contract as finally made?

Even if it should be conceded that no harm was done, it would not be a sufficient answer. It is not a question of harm, but one of power. It was said in Inge v. Board of Public Works, 135 Ala. 187, that "The basis of the bidding and of the contract entered into should be the same, for, otherwise, the very object and purpose of the law in calling for competitive bidding might be thwarted. 'To require the bids upon one basis, and award the contract on another, would, in practical effect, be an abandonment of all bids. [Wickwire v. City of Elkhart, 144 Ind. 305; to the same effect, People v. Board of Improvement, 43 N. Y. 229; Shaw v. Trenton, 49 N. J. L. 339.]' Any material departure in the contract awarded, from the terms and conditions upon which the bidding is had, renders the contract, in a sense, a private one. To permit such in the awarding of public contracts by public officers would be to open wide the door for favoritism and defeat the thing which the law intended to safeguard, in requiring the contracts to be let upon bids made on advertised specifications. It is unimportant whether the additional stipulation . . . be in itself an advantage to the city or not. If it constitutes a material change and therefore a departure from the basis of the bidding, and becomes an element or consideration in the determination of who is the lowest and best bidder, it will invalidate the contract entered into."

The Supreme Court of Wisconsin has aptly said that "The Legislature having seen fit to hedge about municipal action by restrictions so obviously of value to the body politic, it is not for the courts to alter or vary them. Courts have no power to throw the law into a melting pot and recast it at pleasure. They must enforce plain provisions and restrict palpable evasions. The object of the law being to prevent favoritism, corruption, extravagance and improvidence in municipal action, any arbitrary decision on their part outside of the prescribed limits will be closely scrutinized and promptly restricted. Where all the bidders start on a common ground, and bid for a definite object, there is usually very little difficulty in ascertaining which is the lowest bid." [Ricketson v. Milwaukee, 105 Wis. 591, 81 N. W. 864.]

The proceedings leading up to this tax are so clearly invalid as to render the bills void and the circuit court properly so held. The judgment is affirmed. All concur.