## L. F. McCOY et al., Appellants, v. JOSEPH J. RANDALL et al.

**Division One, July 1, 1909.**

1. **APPELLATE JURISDICTION: Special Taxbills.** Where the aggregate of special taxbills which plaintiffs seek by their injunction to have declared illegal and void exceeds $4,500, and they all belong to a single defendant, the Supreme Court has jurisdiction of the appeal. The fact that none of them individually amounts to $4,500 and that they were originally issued against separate pieces of property owned by various persons who sold them to the one defendant, does not deprive the Supreme Court of jurisdiction.

2. ———: **Amount in Dispute.** Upon appeal the interest of both parties must be considered in determining the amount in dispute.

3. **TAXBILLS: Paving Street: Plans Not Filed: Specifications Filed.** Where the charter requires plans and specifications of the proposed public work to be filed with the city clerk or engineer, by "plans" is meant a profile, drawing, chart or picture of the work to be done, and by "specifications" is meant a detailed statement of the work, such as the manner of doing it, the materials to be used, the dimensions of the work, etc. The purpose of the plans is to furnish information to prospective bidders of the character of the work to be done, and thereby to enable them the more intelligently to bid, the object being to increase the number of bidders and competition and hence to reduce the cost to property-owners. But where the public improvement is the paving of a street, it cannot be seen what useful purpose would have been served by filing a profile or picture of the street; and if the ordinance was definite, and the specifications, timely filed, were explicit as to details of the work, the taxbills will not be held to be illegal and void because no plans were filed.

4. ———: **Specifications: Street Grade.** It is not necessary that the specifications for a street pavement state what was the established grade of the street. That is ascertainable from the ordinances.

5. ———: **Accepting Bid: By Viva Voce Vote.** The taxbills are not void because the bid was not accepted by ordinance. Acceptance may be made by *viva voce* vote of the council. The acceptance of the lowest and best bid is not the exercise of a legislative function.

6. ———: **Extension of Time.** Where the original ordinance authorizing the public improvement to be made, provided for an extension of time in which it was to be completed, and the ordinance granting an extension was passed prior to the expiration of the time first given, the taxbills are not illegal because the work was not completed within the time first stated.

Appeal from Jackson Circuit Court.—*Hon. Henry L. McCune,* Judge.

AFFIRMED.

· *A. R. Strother* and *James G. Smart* for appellants.

(1) The Supreme Court has not jurisdiction of this suit and it should be referred to the Kansas City Court of Appeals. The plaintiffs joined in the suit because they had a common interest in the questions of law involved and to avoid a multiplicity of suits and to save costs. And while the aggregate amount of the taxbills levied against their respective properties was in excess of forty-five hundred dollars, not one of the taxbills was equal to this sum. The aggregate amount should not be considered for the purpose of conferring jurisdiction on this court; but the amount assessed against the property of each plaintiff should control in determining the question of jurisdiction. Laws 1901, p. 107 (new section 1649a); Amendment to the Constitution, sec. 3, p. 93, R. S. 1899; Wheeless v. St. Louis, 180 U. S. 379; 4 Federal Statutes Ann., p. 265 (25 Stat. L., U. S. 434). (2) The filing of plans and specifications with the city clerk is a condition precedent to the letting of the contract. The evidence shows no plans were ever filed. There were so-called specifications filed, but these were wholly inadequate and could not be properly called specifications. There was nothing upon which an intelligent bid could be based. Nothing to show the cross-section of the street or the

quantity of earth to be removed or fills to be made in the grading. This departure from the plain letter of the charter requirements renders the contract and the taxbills void. Laws 1901, sec. 5859, p. 65; De Soto ex rel. v. Showman, 100 Mo. App. 329; Barber Asphalt Paving Co. v. O'Brien, 128 Mo. App. 267; Independence v. Nagle, 114 S. W. 1129; McCormack v. Moore, 114 S. W. 40; Dickey v. Holmes, 109 Mo. App. 724; Kneeland v. Wisconsin, 18 Wis. 411; Wells v. Burnham, 20 Wis. 112; Ricketson v. Milwaukee, 105 Wis. 591; State ex rel. v. Benzenberg, 108 Wis. 435; People v. Board of Improvement, 43 N. Y. 227; Clark v. Lancaster (Neb.), 96 N. W. 599; Mozit v. Pittsburg, 137 Pa. St. 548; Kirksville v. Coleman, 103 Mo. App. 215; Welty's Law of Assessment, sec. 290, p. 435. The charter (Laws 1901, sec. 5859, p. 65), provides that the contract shall be let "on plans and specifications" filed with the city clerk. The Legislature used these words, "plans and specifications," with knowledge of their meaning. They do not mean one and the same thing. In architecture, building, civil engineering, in the construction of public improvements and in every other calling, where the words are used, they have a well defined meaning and signify two very different things. In the charter of cities of the third class, these words are joined by the conjunction "and." The language is "plans and specifications." Kneeland v. Milwaukee, 18 Wis. 413; Wells v. Burnham, 20 Wis. 112; Burke v. Kansas City, 34 Mo. App. 578; 22 Am. and Eng. Ency. Law (2 Ed.), 834; Jenny v. Des Moines (72 N. W. 550), 103 Ia. 347; Ampt. v. Cincinnati, 80 Ohio S. and C. P. D. 624; 6 Words and Phrases Judicially Defined, 5399; State v. Kendall, 15 Neb. 273; Worcester Dictionary; Webster's Unabridged Dictionary; Black's Law Dictionary. (3) Ordinance No. 1749 authorizing the work, passed April 4, 1903, contains these words at the foot of section 2: "In all other particulars the work both of grading and paving shall con-

form to the plans and specifications now on file in the office of the city clerk.'' At the time of the passage of this ordinance there were no plans on file, and the specifications then on file were inadequate and insufficient. This ordinance attempted to make papers supposed to be in existence—but not in existence—a part of itself. The ordinance was therefore incomplete and invalid. No bidder could tell without searching the records of the city clerk what was the established grade of the street or what was the cross-section of the street; nor was there anything to show the quantity of earth to be removed or the fills to be made. McCormick v. Moore, 114 S. W. 40; Independence v. Nagle, 114 S. W. 1129; Barber Asphalt Paving Co. v. O'Brien, 128 Mo. App. 267; Dickey v. Holmes, 109 Mo. App. 721. (4) The State law, the charter of Independence (Laws 1901, sec. 5859, p. 65), provides that if no remonstrance is filed ''then the council shall have power to cause a contract for said work to be let to the lowest and best bidder.'' The evident meaning of this language is that the council shall, by ordinance, enter into the contract for doing the work. The bid of W. C. Rice (the only person who offered a bid and to whom the contract was let) was accepted by a *viva voce* vote of the council, no ordinance having been passed accepting the same, and the contract was confirmed merely by a *viva voce* vote of the council, no ordinance having been passed in the confirmation thereof. We respectfully submit that this was not a compliance with the charter and that the contract was void and the taxbills, issued in pursuance thereof, are void. Laws 1901, p. 65, sec. 5859; also, sec. 5858, p. 63; Sedalia to use v. Donahue, 190 Mo. 422; Wheeler v. Poplar Bluff, 149 Mo. 36. (5) The council did not have the power to extend the time as it attempted to do, and the work not having been completed in the 120 days specified, the taxbills are void.

Spalding v. Forsee, 109 Mo. App. 675; Smith v. Westport, 105 Mo. App. 221; Barber Asphalt Paving Co. v. Ridge, 169 Mo. 376.

*Paxton & Rose* for respondents.

(1) All the taxbills in question, amounting to about $5,000, are owned by the defendant, the First National Bank, and this fact gives this court jurisdiction of the appeal. Gartside v. Gartside, 42 Mo. App. 513, 113 Mo. 348; Kuh v. Garvin, 53 Mo. App. 64, 125 Mo. 547; Evens & Howard Fire Brick Co. v. St. Louis Smelting & Refining Co., 48 Mo. App. 634; Washington Market v. Hoffman, 101 U. S. 112. (2) The requirement of the statute that plans and specifications be on file at the time of letting the contract is directory in its nature and not mandatory except so far that there must be enough on file to enable the bidders to get a clear idea of the work contemplated. Plans are not required if the specifications give a clear and definite description. Morley v. Weakley, 86 Mo. 456; Sheehan v. Owen, 82 Mo. 461. (3) There was an ordinance passed for the doing of the work, there was a general ordinance providing for the manner of letting the contract, and an ordinance levying the tax and providing for the bills. This covered the whole ground, and there was no need for two more ordinances, one for awarding the contract and another for confirming it. Sedalia to use v. Donahue, 190 Mo. 407. (4) The original ordinance having provided for an extension of time, and the ordinance granting an extension having been passed before the expiration of the time first allowed, the extension was legal. Hund v. Rackliffe, 192 Mo. 312. (5) There was no effort to remonstrate, no notice to the contractor, no protest, no attempt to enjoin, and after plaintiffs have waited till the taxbills were issued and sold, the law will not cancel the bills and so work a confiscation on mere quibbles and irregularities such as might happen in any proceeding.

Warren v. Barber Asphalt Co., 115 Mo. 580; Johnson v. Duer, 115 Mo. 378; Huling v. Bundara Flag Stone Co., 87 Mo. App. 356; Jaicks v. Merrill, 201 Mo. 109.

WOODSON, J.—This was an equitable proceeding begun in the circuit court of Jackson county for the purpose of enjoining defendants from prosecuting any suits to collect special taxbills issued against the respective lots or parcels of ground belonging to the plaintiffs by the city of Independence, a city of the third class, for grading and paving West College avenue from the west line of Delaware street to the western limits of the city, a distance of about thirty-eight hundred feet; and for the purpose of having said taxbills declared illegal, null and void, and the cloud cast upon the title of the respective plaintiffs to said lots or parcels of ground by reason thereof removed. The taxbills involved in this case are in the usual form and aggregate the sum of $4,992.47, with interest.

There was a trial had before the court, which resulted in a finding of the facts and a rendition of judgment in favor of the defendants. In due time and in proper manner, plaintiff appealed to this court.

In conformity to the charter of cities of the third class, a resolution by the city council was duly passed declaring the grading and paving necessary. On April 4, 1903, a special ordinance was duly enacted authorizing the grading and paving to be done. On May 22, 1903, by *viva voce* vote, the work, after having been duly advertised, was awarded to W. C. Rice for the sum of ninety-four cents per square yard, he being the only bidder. No plans for doing the work were filed with the city clerk by the city engineer at any time, as provided by the charter of such cities, but specifications therefor, as thereby provided for, were

on file during all of the times hereinafter mentioned. Said specifications were as follows:

"Specifications for grading and paving with broken stone West College avenue from west line of Delaware street to the west line of the northeast quarter of the northwest quarter of section 3, township 49, range 32.

"Resolution No. 132, approved March 7, 1903.

"Ordinance No. 1749, approved April 4, 1903.

"Time to complete the work — days from date of contract.

### GRADING.

"Said street shall be graded from street line to street line to the established grade and cross-section. Under this head will be included all work necessary for the formation of the roadway, sidewalks and park spaces, including removing timber, brush, rock, etc.

### PAVING.

"That said street for a width of thirty feet in the center thereof be paved with good hard limestone. Said portion of said street to be paved shall . . . brought to a subgrade, twelve inches below and parallel to the finish grade and cross sections of said street, which shall be rolled with a steam roller weighing not less than ten tons until the subgrade presents a uniform hard surface with proper cross sections and elevations; any soft or spongy places are to be removed and filled with proper material and rerolled.

"Upon this subgrade shall be placed a six-inch course of broken stone ranging in size from one to four-inch cubes, which shall be rolled with a steam roller weighing not less than ten tons until thoroughly compacted, after which a course of broken stone ranging in size from one to three-inch cubes shall be spread on

the first course to such a depth that after being thoroughly compacted the surface of said paving shall conform to the grade and cross section of said street, after which a thin course of rock screening shall be spread evenly over the surface of said pavement and thoroughly worked into the interstices until they are full by liberal use of water and steam roller.

"Bidders will state price per square yard of stone pavement, including all work required by these specifications.

"The work must be executed strictly in accordance with these specifications and under the instruction of the city engineer and strictly to grade and cross section as shown by the stakes set from time to time.

"All work must be finished in a neat, substantial manner.

"Payments will be made in special taxbills against the property liable therefor.    H. H. PENDLETON,
                              "City Engineer."

The ordinance authorizing the work to be done provided, among other things, that "in all other particulars the work both of grading and paving shall conform to the plans and specifications now on file in the office of the city clerk."

The work by the terms of the ordinance was to be completed in one hundred and twenty days from the date on which the contract was awarded unless stopped or delayed, etc., and before the expiration of that time an extension of sixty days was duly given by ordinance, and before the expiration of the sixty days the work was completed.

After the completion of the work, the city, by ordinance duly enacted, levied the special taxes, the collection of which is hereby sought to be enjoined.

Such additional facts as may be necessary for the proper determination of the case will be noted during the course of the opinion.

I. While appellants brought this case to this court on appeal, yet they now insist that it has no jurisdiction to hear and determine the same, but the jurisdiction over the same rests with the Kansas City Court of Appeal, and that it should be certified to that court for adjudication.

The appellants contend that because of the common interest they had in the legal questions involved and to avoid a multiplicity of suits and to save costs, they had the right to join in bringing this suit. And that while the aggregate amount of the taxbills levied against their respective properties was in excess of $4,500, yet not one of them was equal to that sum. It is therefore argued by counsel for appellants that the aggregate amount of said taxbills should not be considered for the purpose of fixing jurisdiction in this case, but the amount issued against the property of each plaintiff should control in determining that question.

Upon the contrary, counsel for respondents contend that this court has jurisdiction of this cause, for the reason that the record shows that the amount of these taxbills is about $5,000, and that all of them belong to and are owned by the respondent bank, which fact fixes the amount in dispute at a sum in excess of $4,500.

The record discloses the fact that the respondent bank is the real party in interest in this case, that it is the real owner of all of the taxbills in question, and that all of the other respondents are but nominal parties, they having disposed of all of their interest in and to the bills to the bank. That being true, the amount in dispute between the appellants and the respondent bank is in excess of $4,500, which amount gives this court jurisdiction. [Session Laws 1901, p. 107, New Sect. 1649-a.]

This question came before the Supreme Court of the United States in the case of Washington Market

Company v. Hoffman, 101 U. S. 112. In that case the Washington Company had offered to the highest bidders at public auction the stalls in the market house for a specific term; after the expiration of that time, some of such bidders filed their bill to enjoin the company from selling the stalls leased to them, claiming that they had the right to occupy them as long as they chose to carry on their business as butchers, provided they thereafter paid rent as it from time to time should become due. From a judgment of the Supreme Court of the District of Columbia in favor of the stall men, the Market Company appealed to the Supreme Court of the United States. In the latter court the stall owners moved to dismiss the appeal for the reason that the value of no one of their claims or interest exceeded the sum of $2,500, the amount which under an act of Congress would entitle any one of them to an appeal to the Supreme Court; but in passing upon that motion the latter court refused to dismiss the appeal, for the reason that the record showed that the aggregate value of the company's rights to those stalls was $60,000, which sum gave the latter jurisdiction under said act.

In Gartside v. Gartside, 42 Mo. App. 513, the plaintiffs' petition showed no value, so that, so far as they were concerned, the appeal was to the court of appeals. That case is like the one at bar in this, that the lower court held against the plaintiffs and they took the appeal. When it reached the Court of Appeals, the record showed that the defendant was trustee of a valuable estate, and that his trusteeship was reasonably worth to him much more than $2,500; and the court, because of defendant's interest, although plaintiffs appealed, transferred the case to this court, which took charge of it without question. [113 Mo. 348.]

In Evens & Howard Fire Brick Co. v. St. Louis Smelting & Refining Co., 48 Mo. App. 634, plaintiff's petition showed no interest which could be stated in money, but defendant's plant was valued at $400,000. The plaintiff, as in the case at bar, failed in the lower court, and took the appeal; and the St. Louis Court of Appeals, in transferring the case to this court, said (p. 635): "It is settled that, where the right of appeal depends on the value of the matter in dispute, such value must be estimated in money. When the object of the suit, however, is not to obtain a money judgment, but other relief, the amount involved must be determined by the value in money of the relief to the plaintiff, or of the loss to the defendant, should the relief be granted, or *vice versa*, should the relief be denied. If either is necessarily in excess of the sum within the appellate jurisdiction of this court, then the Supreme Court has exclusively cognizance of the appeal. We took this view in the case of Gartside v. Gartside, 42 Mo. App. 513, in transferring that case to the Supreme Court, and that court, in refusing to remand the cause to us upon a motion made to that effect, affirmed our holding."

(Syl.) "The Supreme Court has jurisdiction of an appeal by an attaching creditor from a judgment in favor of an interpleader in a suit by attachment, if both the value of the property attached and the aggregate of the demands of the several attaching creditors exceed $2,500; and this, though the demand of the appellant alone is less than that sum." [Kuh v. Garvin, 53 Mo. App. 64.] And the court said (p. 65): "The case of Humphreys v. Milling Co., 98 Mo. 542, presented quite a similar state of facts. There the defendant, Judson, held the sum of $9,818.24 in trust for certain creditors of the Atlantic Milling Company, known as creditors of the 'new running.' Humphreys was one of the secured creditors to the extent of $2,046. He brought his action in equity for the ap-

pointment of a receiver to take charge of the fund, and that he be paid out of it the amount of his debt. He alleged that the transaction with Judson was to hinder and delay creditors. The Supreme Court compelled this court by mandamus to certify the case, upon the ground that more than $2,500 was in dispute." [Kuh et al. v. Garvin, 125 Mo. 547.]

And as suggested in brief by counsel for respondents, "Suppose, for instance, the case at bar were transferred to the Court of Appeals; and suppose, further, that that court were to cancel taxbills of more than $5,000 in value belonging to the First National Bank, then it would be a manifest absurdity to say that there had never been more than $4,500 in dispute."

According to the foregoing authorities, we are clearly of the opinion that this court and not the Kansas City Court of Appeals has jurisdiction over this appeal. And the authorities cited by counsel for appellants and relied upon as holding that the cause should be transferred to the Court of Appeals are not applicable to the facts of this case. They concern only questions of original jurisdiction in lower courts, where, as a rule, it is only necessary to consider the value of the plaintiff's interest in order to determine such jurisdiction; but upon appeal the interest of both parties must be considered in determining the amount in dispute.

We, therefore, hold that this court has jurisdiction of this appeal.

II. It is next insisted by counsel for appellants that the taxbills in question are null and void, for the reason that there were no plans of the proposed work filed with the city clerk, as required by the city charter, prior to the time the contract for doing the same was awarded, or at any other time, for that matter.

Section 5859, as amended in 1901 (Laws 1901), provides, if no remonstrance is filed, that, "then the council shall have the power to cause a contract for said work to be let to the lowest and best bidder on *plans and specifications* filed therefor with the city clerk by the city engineer, or other proper officer, not less than one week's advertisement for bids thereon being made in some newspaper published in the city," etc.

Counsel for appellants take the position that the filing of these plans and specifications with the city clerk is jurisdictional, a condition precedent to the letting of the contract; and that no valid contract for doing the work could be entered into without that condition had first been performed. While upon the other hand, it is contended by counsel for respondents, first, that said provision of the charter is directory only and not mandatory; and, second, that if mandatory, then there was a substantial compliance in this case with its provision.

It is not contended that specifications for doing the work were not filed with the clerk, as provided by the charter, but the contention is that the contract is void, because *plans* therefor were not also filed with the clerk.

The word "plans" as used in the charter means a profile, drawing, chart or picture showing in a general way the character of the work to be done, while the word "specifications" means a detailed statement of the character of the improvements which are to be done. The clear purpose of this charter provision is, that by filing the plans and specifications with the city clerk, information would thereby be furnished to prospective bidders which would better enable them to understand the character of the improvements to be made; and, also, to better enable them to intelligently figure upon the cost thereof. With such knowledge all bidders would be better able to make an in-

telligent bid for the work, and thereby make the competition between them real, and the cost thereof to the property-owners more reasonable than it would more likely be where they did not possess such knowledge.

Viewing this contract in the light of that charter provision, can we declare it void as a matter of law for the reason simply that *plans* were not filed along with the specifications in the office of the city clerk? Counsel for appellants insist that we should answer that question in the affirmative, while respondents contend it should be answered in the negative.

The former cite and reply upon the following cases as supporting their insistence: City of DeSoto ex rel. v. Showman, 100 Mo. App. 323; Barber Asphalt Paving Co. v. O'Brien, 128 Mo. App. 267; City of Independence v. Nagle (Mo. App.), 114 S. W. 1129; Dickey v. Holmes, 109 Mo. App. 721; McCormick v. Moore, 134 Mo. App. 669. None of those cases cover the exact question presented by this record and now under consideration, for in all of those cases there was neither plans nor specifications filed, as required by the charter, but in each and all of them there was a total disregard of the charter provision.

Counsel for respondents rely upon Morley v. Weakley, 86 Mo. 451, and Sheehan v. Owen, 82 Mo. 456, as supporting their contention. In the former case the ordinance authorizing the work to be done provided, in detail, as to the material to be used and the manner of doing the macadamizing, while a general ordinance then in force required a plan or profile of the work with specifications to be filed, showing the character of the material and work to be done. This latter ordinance was not complied with, and for that reason the property-owner tried to escape paying the taxbill. In discussing this question in the former case, Judge BLACK, in speaking for the court, used this language: "The ordinance with respect to macadamiz-

ing, curbing and guttering, provides in detail of what material these classes of work shall be made, how the stone shall be placed and how prepared. In short, they are themselves specifications, and there was no need of anything further to give either bidders or the public full information. The ordinance requiring plans and specifications can have full application in matters of grading and the like, where they are essential to give bidders a full understanding of the work to be done and the manner of doing it, but it should not be construed to require the engineer to do that, by way of specifications, which was clearly stated in the ordinance.'' And in the latter case, Judge HENRY, speaking for the unanimous court, said: "It is conceded that no profile or specifications were filed in the engineer's office; but it was proved that it was not customary to make profiles of that kind of work but only of bridges and similar structures, and that the work in this instance was let according to the usual course pursued before and since. We cannot see that a profile of the work in question was necessary to enable one to bid on it intelligently. It consisted of macadamizing, paving and guttering. A view of the street upon which the work was to be done, with the ordinance before the bidder, served better than a profile to give an idea of the extent and character of the work. The ordinance ordering the work expressly stated of what materials and the manner in which the work was to be done, and the precise quality of the work upon the street, and was as minute and exact in these particulars as could be required in any specifications the engineer might have prepared. We do not think that plaintiff should, as defendant would have him, sustain such a loss for the omission of the city officials to do an act, which, done or omitted, could not materially have affected defendant's interests. The ordinance was published in a daily paper, recorded in the city book of ordinances, and the street upon

which the work was to be done was open to inspection and gave those who wished to bid on the work a better idea of the extent and character of the work than any profile could possibly have done, and it is by no means clear that the city officials have not properly construed the ordinance as not requiring the profiles of such work.''

The only difference existing between those cases and this is, in the former two the ordinance required the *plans* to be filed, while in this the charter made the requirement. But, clearly, that difference could in no manner have a different legal effect upon the contract for doing the work, for in each case the plans and specifications were required to be filed for the purpose of furnishing information to prospective bidders, and they would furnish no more or less information when required by charter than when required by ordinance.

As was said in the Sheehan-Owen case, supra, when we read the ordinances ordering this work to be done, in the light of the specifications which were on file with the city clerk, and in the presence of the street which was to be improved, it is difficult to see what possible harm was done or injury inflicted upon the property-owners by the omission of the city engineer to make and file with the clerk plans for the work in addition to the specifications. There was nothing complicated or difficult to understand about grading and macadamizing this street which could call for a profile or picture of it, which might be of great assistance when bidding for and constructing bridges or other large structures; but in this simple class or character of work, with all of the details thereof fully, stated in both the ordinance authorizing the work to be done and in the specifications which were on file in the clerk's office, no possible wrong or injury could be done to any one by the simple omission to file the plans as required by the charter.

We, therefore, hold that the bills in question are not void for that reason.

III.  The third insistence of counsel for appellants is, that the specifications on file in the clerk's office "were inadequate and insufficient."

We are somewhat at a loss to understand just what is meant by this contention, as counsel have not pointed out in just what way the specifications are insufficient, without it is its failure to state what was the established grade of the street.  If that is what counsel have in mind, then that insistence is untenable, for the reason that the grade of a street can only be established by ordinance, which was done in this case, and that ordinance was a public law of the city, and was, presumably, on file in the office of the city clerk, the same office wherein the specifications were on file; and it would have been no more trouble for bidders to have examined the ordinance establishing the grade than it would have been for them to have examined the specifications upon that point, which could have been nothing more than an abridgement or copy of the ordinance.  By following those directions and specifications, no trouble or inconvenience would have been encountered either in bidding for the work or in performing it according to the terms of the contract.  By so doing the improvements would be done according to contract, and that is just what was done in this case, as was shown by the testimony of all of the witnesses for both sides; those for appellants as well as those for respondents united in saying the work was a good job—no substantial criticism fell from the lips of any of them.  And after all that, the objection here urged seems to come too late to command serious consideration, even though there had been merit in it, which we deny, had it been timely presented to the proper city authorities.

IV. The fourth contention of appellants is, that the contract for doing this work was null and void for the reason that the bid for doing the same was by the city accepted and awarded by a *viva voce* vote of the council, and not by an ordinance duly enacted.

There is no language contained in the charter of the city which requires such acceptance to be made by ordinance. The charter in that regard simply provides that "the council shall have power to cause a contract for said work to be let to the lowest and best bidder."

It is not contended that the bid accepted was not the lowest and best, but it is insisted that the contract is void because the bid was not accepted or contract awarded by an *ordinance* duly executed. No authority has been cited which sustains the contention of appellants' counsel; and no good reason has been suggested why such solemn form of acceptance should have been resorted to. The work was authorized to be done by special ordinance, according to the specifications on file, and according to the general ordinances then in force in the city. That is all this court has ever required in that regard; and in our judgment that was sufficient in this case, where the record shows the contract was accepted by a *viva voce* vote.

This was the view taken of this question by this court when it was presented in the case of Morley v. Weakley, 86 Mo. 451. On page 456 the court uses this language: "The various ordinances, general and special, under which the work was done, were all approved by the mayor. The mere matter of awarding the contracts, under existing laws, was not the exercise of legislative functions, so that the authorities cited by plaintiff in error have little or no application here. Moreover, we do not understand the ordinances to require the mayor to act separately in awarding con-

tracts, but rather that he shall act in conjunction as presiding officer.''

The same is true of this case. The acceptance of the bid by the city of the awarding of the contract to the successful bidder is not the exercise of legislative functions; and there can be no earthly reason for holding such should have been done by ordinance.

V. It is next insisted by counsel for appellants that the record discloses the fact that Joseph J. Randall was interested in the contract for doing this street improvement, and that being a member of the council which ordered the work to be done and the contract executed, the contract was thereby nullified, and, consequently, the taxbills are illegal, null and void.

We have carefully read all of the evidence introduced bearing upon that question, and we are fully satisfied that it was not sufficient to justify any court in finding Randall was interested in said contract. The trial court found against appellants upon that issue, and very properly so, in our judgment. The evidence was not sufficiently strong to raise even a suspicion against the official conduct and good faith of Randall in the matter. The courts should not condemn the acts of public officials without the evidence is sufficient to show misconduct upon their part.

VI. The sixth objection urged against the validity of these taxbills is, that the work was not completed within the time stipulated for in the contract.

The contract provided that the work should be completed within one hundred and twenty days from the date thereof, unless, etc. The contract was executed May 22, 1903, and on August 3, 1904, by ordinance, the time for completing said work was extended sixty days from and after the expiration of the original one hundred and twenty days. The evidence shows and the court found that the work was com-

pleted three days before the expiration of the sixty days' extension given.

This court has held that, where the original ordinance authorizing the improvements to be made provides for an extension of time for its completion, and the ordinance granting the extension was passed prior to the expiration of the time first given, then such extension was valid. [Hund v. Rackliffe, 192 Mo. 312.] The facts of this case bring it within the rule announced in that, which is controlling upon us in this.

VII. The last insistence of counsel for appellant is, that the work was not done according to the contract.

In another paragraph we touched upon this question, and there stated that the evidence showed that the contract had been substantially complied with. All the testimony in the case shows not only a substantial compliance but almost a literal compliance with the terms of the contract. In fact, much more so than any of the cases to which our attention has been called.

So, looking at this case from any of the view points suggested by counsel for appellants, we must hold that none of them are tenable, and for that reason the trial court correctly found for respondents. And, in addition, this being an equity case, we should defer largely to the findings of the trial court as to all issues of fact. [Huffman v. Huffman, 217 Mo. 182.]

We are, therefore, of the opinion that the judgment should be affirmed; and it is so ordered.

All concur.