# R. J. WADDELL INVESTMENT COMPANY v. EMMA PORTER HALL, Appellant.

### Division One, March 3, 1914.

1. **SEWER: Specifications: Preparing and Filing. Before Passage of Ordinance.** The tax bills issued in payment for the construction of district sewers are not void for the mere reason that the specifications were not prepared and on file prior to the passage of the ordinance providing for the establishment and construction of the sewers. Neither the charter nor the ordinances of Kansas City require the specifications to be made out and filed prior to the passage of the ordinances authorizing the work. To hold that the charter provision requiring the ordinance to fairly outline in general terms the "dimensions, material and character" of the sewer demands that the minor details of the proposed work should be prepared and filed before the ordinance is enacted would be a narrow construction, technical without substance. [Disapproving, on this point, language in Dickey v. Holmes, 109 Mo. App. 724, and cases following it.]

2. ——: ——: **Ordinance.** If the ordinance authorizing the public improvement in general terms designates and describes its "dimensions, material and character," either by the language of the ordinance or by specific reference to general plans and specifications then on file, the ordinance is valid. Nor need the plans and specifications then on file set forth the minute details of the work which are to be thereafter written into the contract. These minute details should be prepared and filed before the bidding, but need not be on file at the time the ordinance is passed.

Appeal from Jackson Circuit Court.—*Hon. Hermann Brumback,* Judge.

AFFIRMED.

*Bowersock, Hall & Hook* for appellant.

(1) If the specifications were not prepared and on file prior to the passage of the ordinance, the tax bills, sued on, are void. Sec. 10, art. 9, Kansas City Charter of 1889; Dickey v. Holmes, 109 Mo. App. 721; Dickey v. Orr, 132 Mo. App. 416; Independence to use

v. Knoepker, 134 Mo. App. 601; McCormick v. Moore, 134 Mo. App. 669; Richardson v. Walsh, 142 Mo. App. 328; Kneeland v. Milwaukee, 18 Wis. 411; Wells v. Burnham, 20 Wis. 112; Ricketson v. Milwaukee, 105 Wis. 591; State ex rel. v. Benzenberg, 108 Wis. 435; Bridge Co. v. Durand, 122 Wis. 96; Buckley v. Tacoma, 9 Wash. 253; People v. Board of Improvement, 43 N. Y. 227; Moyet v. Pittsburgh, 137 Pa. St. 548. (2) The question of whether or not the specifications were prepared and on file prior to the passage of the ordinance, should have been submitted to the jury. Parker-Washington Co. v. Dennison, 249 Mo. 449; Koerner v. Car Co., 209 Mo. 141; Mathais v. O'Neill, 94 Mo. 520; Blodgett v. Schaffer, 94 Mo. 652; State v. Taylor, 126 Mo. 531; Walker v. Barron, 6 Minn. 508; State v. Railroad, 52 N. H. 528; Wigmore on Evidence, sec. 92.

*W. R. James* and *Scarritt, Scarritt, Jones & Miller* for respondent.

(1) The construction ordinance clearly prescribes the dimensions, material and character of the sewer, as required by the Kansas City charter. Excelsior Springs to use v. Ettenson, 120 Mo. App. 226; Whitworth v. Webb City, 204 Mo. 579; Porter v. Paving Co., 214 Mo. 1; Dickey v. Porter, 203 Mo. 36; Sheehan v. Gleeson, 46 Mo. 104; St. Joseph to use v. Owen, 110 Mo. 455; Joplin ex rel. v. Hollingshead, 123 Mo. App. 602; Platte City to use v. Paxton, 141 Mo. App. 181. (2) Neither the Kansas City charter nor the revised ordinances required the filing of the specifications until the time of the advertisement for bids. And there is not a scintilla of evidence that the specifications were not on file before and during all the time bids were being advertised for. Excelsior Springs to use v. Ettenson, 120 Mo. App. 215; Paving Co. v. Ullman, 137 Mo. 568; Construction Co. v. Coal Co., 205 Mo. 72; St. Joseph ex rel. v. Landis, 54 Mo. App. 315; Dickey

v. Porter, 203 Mo. 37; McCoy v. Randall, 222 Mo. 24. (3) The Court of Appeals decisions cited by appellant considered. Whitworth v. Webb City, 204 Mo. 579; Dickey v. Porter, 203 Mo. 1; Porter v. Paving Co., 214 Mo. 1; McCormick v. Moore, 134 Mo. App. 674; Fox v. Schoenemann, 52 Mo. 348; Gist v. Construction Co., 224 Mo. 369; Johnson v. Duer, 115 Mo. 381.

GRAVES, J.—This is an action to enforce the lien of certain tax bills, issued by Kansas City in part payment of the cost of a district sewer, against certain described city lots in said city owned by the defendant. The petition is in usual form and further note thereof may be omitted. The improvement for which these tax bills were issued was authorized by Ordinance No. 16521, which this court had under review in Porter v. Paving & Construction Co., 214 Mo. 1, whereat will be found a thorough outline of the ordinance and the work done thereunder. In the Porter case, supra, it was sought in equity to have the tax bills canceled as clouds upon the title of Porter's property in Sewer District No. 227, the same district involved in the instant case. The validity of the tax bills in the Porter case was affirmed by this court.

Defendant in this case seeks by answer to inject new and different propositions, which can best be noted in connection with the points made. Suffice it to say at this time that upon a trial had the trial court, upon all the evidence, directed a verdict for the plaintiff, which was accordingly found in a sum sufficient to measure up to the appellate jurisdiction of this court, and from a judgment entered upon such verdict the defendant has appealed. The charter provision involved in this suit is section 10, article 9, which reads:

"The city may, with the approval of the Board of Public Works, from time to time, cause a district

sewer or sewers to be constructed in any sewer district heretofore or hereafter established whenever the common council may deem such sewer necessary for sanitary or other purposes, and such sewer or sewers shall be of such *dimensions, material and character as shall be prescribed by ordinance,* and any district sewer heretofore or hereafter constructed may be changed, diminished, enlarged or extended, and shall have all the necessary laterals, inlets and other appurtenances which may be required."

Under this charter power, the city passed Ordinance No. 16521, which is the ordinance involved in this suit. This ordinance is quite long, but by cutting out certain descriptive portions it can be shortened, and had best be presented. It reads:

"*An Ordinance to Establish and Cause to be Constructed District Sewers in District No.* 127.

"Be it ordained by the Common Council of Kansas City, Missouri.

"Section 1. That district sewers be and the same are hereby established and shall be constructed in Sewer District No. 127, which shall consist as follows, to-wit:

"A lateral sewer No. 12, beginning in the alley between Charlotte street and Campbell street twenty feet north of the south line of District No. 127; thence north along the center line of said alley to the center of Twenty-eighth street with an interior diameter of eight inches; thence north along the center line of said alley to a point five feet south of the south line of Grauman Avenue; thence east a hundred and seventy-eight feet; thence north and twenty feet west of the east line of Charlotte street to a point on the south line of lot ten, block two, Hill Crest, produced from the east; thence east to the southeast corner of said lot ten, block two, thence northeasterly eighty-five and seven-tenths (85.7) feet to a point on the northwesterly line of lot six, block two, aforesaid; thence northeas-

terly to the northwest corner of lot four, block two, aforesaid; thence north to the center of Twenty-seventh street, at its intersection with the center line of the alley between Campbell street and Charlotte street, produced from the north; thence north along the center line of said alley to the center of Twenty-sixth street, with an interior diameter of twelve inches; thence north to an outlet into lateral Sewer No. 13, at the intersection of said alley with the center line of Twenty-fifth street, with an interior diameter of fifteen inches.

[Here follows the description of Lateral Sewers 13 and 14, which gives their respective size as three feet and eight inches in interior diameters; Sewer 13 being three feet, and Sewer 14 being eight inches, in diameter.]

"Said sewers shall have all necessary manholes and flush tanks with their necessary connections and shall be paid for in special tax bills against and upon the land in said sewer district as provided by law, which work the common council and Board of Public Works deem necessary to have done for sanitary and drainage purposes.

"Section 2. All said sewers twenty-four inches and under in diameter shall be constructed of vitrified clay pipe; all of said sewers three feet inside diameter shall be constructed of hard burned brick laid in hydraulic cement mortar, except in middle section of the inner ring of the invert which shall be constructed of vitrified brick laid in Portland cement mortar.

[Here follows the location of the several manholes with exactness and great detail.]

"Said manholes shall conform in detail to plans on file in the office of the Board of Public Works marked Style 'C' and approved June 14, 1898.

"Flush tank with the necessary water connections for the purpose of flushing and cleansing said sewer

shall be constructed as a part of or appurtenance to said sewer, at the south end of Lateral Sewer No. 12.

"Said flush tank shall conform in detail to plans on file in the office of the Board of Public Works marked 'approved' and dated May 9, 1893.

"Lamp hole for the inspection of said sewer shall be constructed of eight-inch vitrified clay pipe immediately north of said flush tank."

[Here follows the minute locations of the several catch basins.]

"Said catch basins shall conform in detail to plans on file in the office of the Board of Public Works marked Style 'C' and approved June 14, 1898.

"Section 3. Said sewers shall conform in detail to plans and specifications prepared for the construction of said sewers, said plans on file in the office of the Board of Public Works marked 'approved' and dated February 23, 1901.

"Section 4. All ordinances or parts of ordinances in conflict with this ordinance are insomuch as they conflict with this ordinance hereby repealed."

This sufficiently outlines the situation for a discussion of the questions raised by defendant's answer in the case, and in the brief in this court.

I. Defendant thus outlines the first contention made in this case: "If the specifications were not prepared and on file prior to the passage of the ordinance, the tax bills sued on are void."

Tax Bill: Filing Specifications Before Ordinance is Passed.

We have not set out the answer of the defendant, but it will suffice to say that it raises this question. There may be expressions from the appellate courts of this State which sustain this view of the law, but this court has never given such a narrow construction to the law governing proceedings of the kind involved here. In Gist v. Construction Co., 224 Mo. l. c. 379, this court, In Banc, through LAMM, J., purposely un-

dertook to express our disapproval as to some of the extremely narrow and technical rulings in cases involving public improvements. That it may be known that we are still of that mind, we will leave that opinion to speak our views in this case, because it outlines the proper rule of construction. LAMM, J., there said:

"It is a fundamental proposition that laws, whether state or municipal, are presumed passed in a spirit of justice and for the welfare of the community. It follows they should be so interpreted, if possible, as to further that purpose. Therefore, while laws and ordinances anent the improvements of streets should be subjected to reasonable analysis and construction, yet they should not be subjected to an over-nice analysis or to any unfriendly construction, springing from the notion that the contractor is prone to mischief or that street improvements are evils to be judicially circumvented. This, because it will be found that such view is bound to end in hardship on the abutting owner as well as the general public. We take it as a self-evident truth that the more technical and sour courts become in interpreting street improvement contracts, ordinances and laws, the more danger and moral hazard to the contractor creeps into every such improvement. So (as in insurance) the more the danger and moral hazard, the higher the bid of the contractor for his own self-protection in discounting that danger and moral hazard. Now, the higher his bid, the greater the cost for a given improvement. No one would deny that street improvements are a necessity of modern city life and that all streets and alleys must be eventually graded and paved. In that behalf every citizen of a town must at some time dance and pay the fiddler. Hence, he has an abiding and substantial interest in having ordinances, laws and contracts relating to such improvements construed with the utmost fairness and justice and without such nice particularity and overrefinement as unduly increase the risk of

the contractor, drive up his bid and (as surely as night follows day) end in burdening those who have the bills to pay. In other words, those who live in towns are vitally interested in a situation producing the lowest responsible bidding in street improvement and inviting the most efficient competition; therefore courts can do no better service than to aid that happy consummation with every allowable art and reason of the law. If, now, instead of a spirit of friendliness to such improvements, contracts, ordinances and laws (that is, assuming they are legal and just until the contrary appears), courts assume a frosty attitude, searching as with a lighted candle for technicalities, inadvertences and minor defects, not of substance, and assigning them an office in overturning an improvement scheme and defeating the collection of tax bills, then the hazards of street contracting are enhanced, competition is stifled and the price bid is swollen to the extent that the extra hazard is met with extra pay.''

Neither the charter of Kansas City nor the ordinances thereof required the specifications of the work to be done to be made out and filed prior to the passage of the ordinance authorizing the work. The defendant has introduced in evidence some sections of the Kansas City ordinances in force at the time, and among them is section 877, which reads:

''Before advertising for bids for doing any of the work mentioned in the first section of this chapter, the city engineer shall make out detailed plans and specifications for the work to be done, and keep the same on file in his office for information of all desiring to bid on the work.''

We have taken the trouble to get the Charter and Revised Ordinances for 1898, in order that we could gather more fully the connection. This section 877 is one of nine sections under article 7 of chapter 14 of the Revised Ordinances of 1898. Article 7 is en-

titled "Sewers, Drains and Culverts," and, as said, said article contains but nine sections, all of which relate to the subjects indicated by the title. The first section of the article is section 874, and it reads:

"Whenever any ordinance shall provide for the construction of any public sewer, district or joint district sewer, drain or culvert, the same shall, unless therein otherwise specially provided, be deemed and taken to require that all excavation and materials necessary for the work shall be done and furnished by the contractor or contractors; that all necessary laterals, inlets and other appurtenances shall be constructed and that, after the work of constructing the sewer proper shall be completed, the excavation over and around the same shall be filled in with earth or stone by the contractor or contractors, all as part of the work, so as to protect the same and leave the surface of streets, avenues, alleys, lots and other places, over the same, level and safe, and in as good condition as before the work was commenced."

Section 875 provides for advertisement for bids. Section 876 relates to the letting of the contracts, and among other things says that such contracts for sewers shall "be let, executed and approved, in all respects, as far as practicable, in the same manner as contracts for grading are let, executed and approved, when the cost of the grading is to be paid for in special tax bills." Then follows section 877, quoted above.

Reverting then for a moment to matters pertaining to grading streets, we find the same idea expressed, i. e. that the specifications are to follow the passage of the ordinance and not precede it. Thus we find in this record before us, introduced by the defendant, section 811 of said Revised Ordinances. Said section 811, so far as pertinent to our question, reads:

"When an ordinance shall provide for the doing of any work mentioned in the second section of article

9, of the city charter, the city engineer shall, as soon as practicable thereafter, provide the necessary plans and specifications, which shall, in cases where a contract must be let to the lowest and best bidder, prescribe a time within which the work shall be finished, and the amount of security to be given by the contractor for the performance of the work."

So that it is clear that the legislative department of the city government has never construed the city charter to require specifications of the work to be on file before the ordinance authorizing the work was passed. By the word specifications, we mean the instrument which gives all the minor details of the proposed work, and which should be given before bids are taken for the work. The city charter, when it used the words "and such sewer or sewers shall be of such dimensions, material and character as shall be prescribed by ordinance," never intended that the ordinance should set out all of the details necessary to go into a proper contract for the performance of the work. Such provision of the charter requires that the ordinance should fairly outline in general the "dimensions, material and character" of the sewer, but it was never intended that the ordinance should go into all the detail which should properly go into a contract for the work, or into such specifications, as would properly enlighten bidders.

We have purposely set out at some length the ordinance involved in this case, and we have no hesitancy in saying that in it is a substantial compliance with the charter of the city. But reverting to the necessity of the filing of the specifications before the enactment of the ordinance. There is language in Dickey v. Holmes, 109 Mo. App. 1. c. 724, and in some cases following it from that court, which lends some countenance to the contention of counsel, but if that is so, those cases should not longer be followed. It will be noticed that street improvements (where tax bills

are to be used as the method of payment) are put upon the same basis, by the legislative power of the city, as public sewers. In both instances the specifications are required to be filed before the bidding occurs.

Under the rulings of this court we take it that if the ordinance authorizing the improvements in general terms designates and describes the "dimensions, material and character" of the proposed public improvement, either by the language of the ordinance or by specific reference to *general plans and specifications then* on file, the ordinance is valid. Nor would the plans and specifications *then* on file have to go into the minute details of specifications intended to give light to bidders and to be thereafter written into the contract. These latter should, as the ordinance says, be prepared and filed before the bidding, but need not be on file at the time the ordinance is passed. Thus, in Asphalt Paving Co. v. Ullman, 137 Mo. l. c. 571, this court said:

"The specifications which were to be found in the engineer's office, when the ordinance was passed, were plans and profiles of the work required on Sixth street, with blank forms which gave the particulars demanded by the engineer (in the doing of the class of work here in question) in the same terms as those which appear in the contract (finally made with the city by the plaintiff) under the head of 'Specifications.' The latter contained elaborate directions for the work from beginning to end, and thus made the intent of the ordinance definite and clear. The specifications defined what was meant by the ordinance as to the subject of curbing, as well as concerning all other branches of the projected improvements. Curbing was, nevertheless, mentioned in a general way (as an item of the improvement) in the fifth section of the ordinance. The reference in the ordinance to the specifications in the office of the engineer was quite sufficient as a description of such work. It was not necessary for all the de-

tails of the working plan to be developed in the ordinance itself. [Becker v. Washington (1888), 94 Mo. 375.]'' To like effect in Construction Co. v. Coal Co., 205 Mo. l. c. 72, whereat GANTT, J., said:

''Defendants insist that the award of the contract was void because no specifications had been made by the city engineer, and no time had been prescribed in which the work should be finished, and the amount of security to be given by the contractor had not been fixed at the time the city engineer advertised for bids. It is confidently asserted by counsel for the defendant that no specifications had been made by the city engineer prior to the awarding of the contract and advertisement for bids, this is based upon the testimony of a witness Maloney, who was not at that time in the employ of the city engineer and who it appears from his cross-examination had never examined these proceedings until probably a year before the trial of this cause, and he testified that the plans were on file before the ordinance was passed, but that there were no specific specifications until about four days prior to the opening of the bids; whereas Mr. Harper, the chief draftsman in the engineer's office, testified that the specifications were made just as soon as the ordinance was passed, and that the general specifications and the details had all been prepared previous to that time, except of course the amount of the security, which was regulated by the amount of the bid. He testified further that at the time the notice to contractors began to be published in the city papers, these plans and specifications had been made and were there on the desk in the office for contractors to examine. The ordinance, section 990 of the Revised Ordinances, provides that when any ordinance shall provide for the doing of any work mentioned in the second section of article 9 of the charter, the city engineer shall, as soon as practical thereafter, make out the necessary plans and specifications, which shall, in cases where

the contract must be let to the lowest bidder, prescribe the time within which the work shall be finished, and the amount of security to be given. Maloney testified that the time within which the work was to be completed was put into the specifications as soon as they were prepared, but that the amount of security to be given by the contractor was not inserted in the contract until after the work was let. Both he and Mr. Harper testified that the amount of security' was filled after the contract was awarded and at the time the bond was made, that the universal custom of the office was to require the amount of security to be equal to the total cost of the work. We think it is clear that the time within which the work was to be completed was inserted in the specifications before any bidding was made upon the contract, and that the fixing of the amount of ·the security upon the basis of the contract after it was let was a substantial compliance with the charter. The evidence of Maloney, however, as to all of these matters, according to his own statement, was largely if not entirely hearsay, and ought to carry very little weight.''

Section 990 of the ordinance then reverted to is practically section 811 of the ordinance here in question. In the later case of Dickey v. Porter, 203 Mo. l. c. 37, the same jurist said:

''And yet it is now insisted that the whole proceeding is void because the ordinance itself did not fix the thickness of the sewer pipe. The evidence discloses that the contract and specifications were prepared before the letting of the work was done and the contractor, Ford, testified that when he went to the office of the city engineer to bid on the work, he found the specifications and plans and the profiles. It also appears in evidence that the contract to be executed by the successful bidder was also prepared and was on file for the inspection of the bidders before the bidding was done. The contract entered into in this case by

Ford provided that 'the pipes shall be straight, smooth and evenly burned, thoroughly sound and vitrified well glazed, free from lumps or other imperfections, of uniform quality and thickness, and shall not vary more than one-half inch from a true circle. The thickness shall be of twelve inch pipe, not less than one and one-eighth inches; of fifteen inch pipe not less than one and one-fourth inches, and of eighteen inch pipe, not less than one and one-half inches, and of twenty-one inch pipe, not less than one and three-fourths inches.' Not only did Mr. Harper, who had been in the office of the city engineer for twelve years, and Mr. Ford, the contractor, testify that the specifications and contract were prepared before any steps were taken for advertising for bids, but the contract on its face shows that the contract and specifications were embodied in the same instrument and it was on these specifications and this contract that the bid was made. The evidence further tends to show that it had been the uniform custom and practice to use but one character of sewer pipe for sewers of this dimension during the twelve years, and that was that it should be double strength vitrified pipe. So far then as the thickness of the sewer pipe is concerned, there was ample evidence that it was specifically named in the specifications and there is no pretense that the contractor bid on double strength sewer pipe, and put in an inferior quality. In view of the decisions of this court in Sheehan v. Gleeson, 46 Mo. 100, and City of St. Joseph to use v. Owen, 110 Mo. 445, we are of the opinion that the neglect to describe the thickness of the sewer pipe in the ordinance does not and should not invalidate this contract, especially so in view of the fact that the circuit court was not asked to declare the proceedings void because the thickness of the sewer pipe was not specified.''

Judge GANTT cites with approval Sheehan v. Gleeson, 46 Mo. 100. In that case, at page 104, BLISS, J., said:

"But defendant's counsel criticise it as not being sufficiently specific, and insist that too much discretion is still left to the engineer. We should first premise that, as a matter of necessity, some discretion must be left to the executive officers. It would be difficult for ordinances to specify every particular of a work, but they must be more or less general, and must take many things for granted in the history, geography, and topography of the place, and in the arts called into requisition by the improvements ordered. And we should further premise that an ordinance may lack desirable precision, and still may so provide for the manner in which an improvement shall be made, and be such a compliance with the law, although a loose one, that .the courts would not be authorized to invalidate the action of the city officers under it. It is not every irregularity or omission that goes to the substance of a proceeding.

"Counsel object that the precise thickness and depth of the curbstones, their material and manner of dressing, are not fixed by the ordinance. I can see no plausibility even in either of the objections except the first. The ordinance fixed a minimum of thickness and depth, and the contract shows that the curbing was built of precisely those dimensions. It certainly was a direction in relation to the manner of building it, though justly subject to criticism as not being sufficiently specific. Though an irregularity in the action of the common council, yet it was action in the right direction, and we should not be warranted in holding the proceedings under it as wholly unauthorized. The nature and manner of dressing of common curbing in the city is as well understood as the meaning of the word itself, *and like a hundred other particulars that should be noted in a contract, would unnecessarily encumber an ordinance.*"

255 Mo. 44

The italics are ours, and the language used is indicative of the very distinction we have in mind, i. e., that the ordinance on its face or by reference on its face to general plans on file, must fairly cover the "dimensions, material and character" of the proposed work, but the details of specifications may come later, but before the bidding and the contract. Judge GANTT in the Dickey case, supra, likewise cites with approval the case of the City of St. Joseph to use v. Owen, 110 Mo. 445. In this St. Joseph case, Judge SHERWOOD, at page 455, makes these pertinent remarks:

"The first section of the ordinance describes the dimensions and material of the sewer pipe to be used, but gives no such description as to the manholes and inlets called for in that ordinance, and this is urged as a serious defect. In respect to this, it may be said that, though the charter requires that the size of the sewer to be constructed shall be prescribed by ordinance, yet there is no such requirement in regard to the inlets, manholes, etc., nor of the material of which they are to be constructed. These appendages to the sewer may well be regarded as matters of detail, which not being required to be specified in the ordinance it is not necessary thus to insert them.

"Something must be left to the discretion of the sworn officials whose duty it is to accept bids and make contracts. The principal thing is the construction of the sewer, the incidents are the manholes and the inlets. The same argument which would condemn an ordinance as being faulty, because it did not describe the materials and dimensions of manholes and inlets, would utter a similar condemnation if the quality and quantity of the sand and cement to be used in the construction of the sewer were not also specifically set forth."

Similar views upon cognate questions were likewise expressed by WOODSON, J., in McCoy v. Randall, 222 Mo. 24.

The ordinance before us in the case at bar goes into many details as to the "dimensions, material and character" of the proposed sewer. It then specifically refers to certain plans on file. The record in this case does not show that these general plans and specifications were not on file, as stated in the ordinance. On the contrary the documentary evidence with the file marks of the Board of Public Works tends to show they were there. By this I do not mean that all the details afterward embodied in the contract were on hand at the time the ordinance was passed, but the documents referred to in the ordinance were on hand, and when taken with the ordinance they outline the proposed work so as to bring the ordinance within the charter provisions of the city. The specifications referred to by appellant are evidently these detailed specifications as indicated on page 5, 6 and 7 of the brief, and we decline to uphold these contentions of counsel.

II. The second and last point made in the brief thus reads:

"The question of whether or not the specifications were prepared and on file prior to the passage of the ordinance, should have been submitted to the jury."

What has been said in the previous paragraph applies here. It is not contended that the **Question For Jury.** plans described in the ordinance thus: "Said manholes shall conform in detail to plans on file in the office of the Board of Public Works marked Style 'C' and approved June 14, 1898," were not on file just as recited in the ordinance. Nor is it contended that the plans for the flush tank approved March 9, 1893, were not in fact on file. What appellant is urging is that the detailed specifications were not made out until after the ordinance was passed, and that the question as to whether they had been made

out prior to the passage of the ordinance should have been left to the jury. We have in the previous paragraph held that it was only necessary to have these detailed specifications for inspection before the bidding, and that the city ordinances provided for them to be made after the passage of the ordinance authorizing the work, and it might be conceded that they were not prepared until afterward, and yet the judgment of the lower court should not be disturbed. If as we hold, these detailed specifications did not have to be filed before the ordinance was passed, there was no question to be submitted to the jury thereon.

This case illustrates the extreme technicalities resorted to by many property owners to escape the payment of their just proportion of a public necessity. Courts, both high and low, should look with disfavor upon such cases. It is sufficient, in conclusion, to say, that the trial court did the only thing which under the law and good conscience it could have done, and its judgment is affirmed.

All concur; *Bond, J.,* in result only.