MATTHIAS SCHNELL *et al.* Plaintiffs in Error, *vs.* THE CITY OF ROCK ISLAND *et al.* Defendants in Error.

*Opinion filed December 17, 1907—Rehearing denied Feb. 6, 1908.*

1. LACHES—*delay must be unreasonable to bar tax-payer's right to enjoin city from paying illegal bonds.* Ordinarily, if a city has a right to refuse to pay an obligation on account of its illegality, a tax-payer has the right to compel the city to refuse, and a strong case must be presented in order to bar relief in equity upon the ground of *laches.*

2. SAME—*when tax-payers are barred by laches from enjoining payment of void bonds by city.* Bonds issued by a city evidencing an unconstitutional indebtedness are void, and the payment of in-

terest for a long term of years and the refunding of the debt by new bonds does not render the new bonds valid; but tax-payers who have stood by without protest for more than thirty years from the original bond issue without attempting to enforce their rights are barred by *laches* from enjoining payment by the city.

3. CONSTITUTIONAL LAW—*limitation as to indebtedness is not a limitation upon power of taxation.* The constitutional limitation against the incurring of indebtedness by a city is not a limitation upon the power of taxation, and the legislature has power to authorize municipal corporations to raise moneys by taxation sufficient for their needs.

4. SAME—*city in debt up to constitutional limit cannot do business on credit basis.* A municipal corporation which is in debt up to the limit imposed by the constitution must carry on its business upon the cash plan and not upon credit to any extent or for any purpose, but it is not precluded from making a contract which calls for payment from funds already on hand and available.

5. SAME—*when water-works extension certificates create an indebtedness.* A city may acquire a water-works system by pledging the income therefrom until it shall pay for the system, without thereby creating an indebtedness; but water-works extension certificates, to the payment of which is pledged the entire income of the water-works system already owned by the city, create an indebtedness.

6. SAME—*a contract for street lighting at monthly rental per lamp creates a debt.* A contract made by a city with an electric company to furnish lights to the city, for which the city is to pay a fixed sum per light, monthly, creates an indebtedness, and is void if the city is already indebted beyond the constitutional limit.

7. SAME—*a contract calling for payment from money to be collected creates a debt.* A contract between a city and a construction company which provides that payment shall be made by orders on the water fund *when collected,* and not from moneys already on hand, creates a debt.

8. SAME—*when ordinance authorizing mayor to borrow money is void.* When a city is indebted beyond the constitutional limit, an ordinance authorizing the mayor and finance committee to borrow a sum of money to purchase a hook and ladder truck is null and void, and the contract of the mayor for such truck, to be paid for within thirty days after delivery, is illegal.

WRIT OF ERROR to the Circuit Court of Rock Island county; the Hon. W. H. GEST, Judge, presiding.

JOSEPH L. HAAS, and H. A. WELD, for plaintiffs in error:

The city of Rock Island being indebted in excess of five per cent of the taxable property therein at all times since the adoption of the constitution, all indebtedness set up in the bill which has been incurred since that time is absolutely void. *Springfield* v. *Edwards,* 84 Ill. 626; *East Moline* v. *Pope,* 224 id. 386; *Prince* v. *Quincy,* 105 id. 138, and 128 id. 443.

The fact that bonds issued by a municipality in excess of the constitutional limitation are payable only out of a particular fund (*e. g.,* water-works fund,) is immaterial. All liabilities are payable out of some fund. If the fund belongs to the city and the city agrees to use it to pay bonds with *in futuro,* such bonds constitute a debt of the city within the constitutional inhibition. *Joliet* v. *Alexander,* 194 Ill. 457.

After a city is indebted up to its constitutional limit it has no power to make a contract for a definite number of street lights, payment to be made monthly, (*Chicago* v. *Galpin,* 183 Ill. 399,) hence the city in this case had no power to make its contract with the power company.

Equity will enjoin the collection of a tax for the payment of bonds issued without authority of law after they have been sold. *Sherlock* v. *Winnetka,* 68 Ill. 530.

A court of equity will entertain a bill on behalf of taxpayers for relief against an act of misappropriation of public corporate funds after it has been committed as well as to enjoin the commission of such act when meditated. *Jackson* v. *Norris,* 72 Ill. 364.

The contract of the city in issuing and refunding the void bonds and certificates of indebtedness and executing the void contracts precludes the idea that it would set up the defense of *ultra vires* against them. When a city takes that attitude it is properly made a defendant to a bill by a tax-payer. *Jackson* v. *Norris,* 72 Ill. 364.

When a city undertakes to create obligations directly in contravention of the constitution such obligations are absolutely void. That they may be in the hands of third parties who have acquired them in the due course of business, for value, makes no difference. Neither the city nor a taxpayer is estopped to dispute their validity, even though the city has levied taxes and the tax-payer paid taxes for paying interest or principal of such obligations. *Lippincott* v. *Pana*, 92 Ill. 24; *Marshall County* v. *Cook*, 38 id. 45; *Stebbins* v. *Perry County*, 167 id. 567; *Shaeffer* v. *Bonham*, 95 id. 368.

The payment of bonds issued by a municipal corporation in excess of the constitutional limitation of indebtedness will be enjoined at the suit of a tax-payer. *Anderson* v. *Insurance Co.* 88 Iowa, 579; *Metzger* v. *Railroad Co.* 79 N. Y. 171; *Strang* v. *Cook*, 47 Hun, 46.

The doctrine of *laches* has no application to such a case as the present. *Anderson* v. *Insurance Co.* 88 Iowa, 579; *Burrall* v. *Telegraph Co.* 124 Ill. 266.

Sweeney & Walker, and Searle & Marshall, (J. F. Witter, City Attorney, of counsel,) for defendants in error:

Complainants' *laches* defeats all equitable relief. *Tash* v. *Adams*, 10 Cush. 252; *Fuller* v. *Inhabitants*, 1 Allen, 166; *Bowman* v. *Mathew*, 42 U. S. 189; *Keeling* v. *Railway Co.* 205 Pa. 31; *Logansport* v. *Uhl*, 99 Ind. 531; *Attorney General* v. *Burrill*, 31 Mich. 25.

*Laches*, unexplained, may be reached by demurrer. *Kerfoot* v. *Billings*, 160 Ill. 563; *Walker* v. *Ray*, 111 id. 315.

Water funds must be kept a separate fund and applied to payment of interest, bonds, construction and running expenses of the water system. The statute makes the appropriation itself. Hurd's Stat. chap. 24, secs. 259, 270.

Equity looks at the substance and intention, and not to the form. *Olds* v. *Cummings*, 31 Ill. 188; *Beach* v. *Shaw*, 57 id. 17; *Flower* v. *Elwood*, 66 id. 438.

The statute will be read into the bonds and contracts. *Law* v. *People*, 87 Ill. 385; *Fuller* v. *Heath*, 89 id. 296.

The constitution must be liberally construed. *Pettibone* v. *Park Comrs.* 215 Ill. 304.

In equity the water-works certificates are valid. Rev. Stat. chap. 24, secs. 270*a*, *b*, *c*; *Law* v. *People*, 87 Ill. 385.

Warrants drawn against cash in treasury or warrants specifically drawn on a particular fund are valid. They do not increase the debt of the city. *Springfield* v. *Edwards*, 84 Ill. 626; *Law* v. *People*, 87 id. 385; *Fuller* v. *Heath*, 89 id. 296; *Brauns* v. *Peoria*, 82 id. 11; *Sullivan* v. *Highway Comrs.* 114 id. 262; *Highway Comrs.* v. *Jackson*, 165 id. 17; *East Moline* v. *Pope*, 224 id. 386.

The statute limiting contracts for the current year to the amount appropriated therefor only relates to the general fund. It does not apply to special funds. Rev. Stat. chap. 24, art. 7, sec. 3.

Orders are valid although there is no money in treasury or no appropriation. *Kankakee* v. *McGrew*, 178 Ill. 74.

Mr. Justice Cartwright delivered the opinion of the court:

The circuit court of Rock Island county sustained the demurrers of defendants in error to the bill in equity filed by plaintiffs in error, as tax-payers, to enjoin the city of Rock Island and its officers from paying certain bonds, certificates and moneys becoming due on contracts entered into by said city, and the bill was dismissed for want of equity, at the costs of plaintiffs in error. The writ of error in this case was sued out to bring the record here for review.

The facts stated in the amended bill, which are admitted by the demurrers, are, in substance, as follows: When the constitution of 1870 was adopted the city of Rock Island was indebted to the amount of $170,000, which was

more than double the five per cent limit of indebtedness fixed by the constitution, and that indebtedness has continued ever since, and has at all times exceeded, and now exceeds, five per cent of the assessed value of property within the city. That indebtedness was funded by an issue of bonds dated September 1, 1877, payable in twenty years, and when that issue of bonds fell due, on September 1, 1897, the city issued new bonds to the amount of $170,000 to retire the former issue. While the city was so indebted, and when the limit of indebtedness under the constitution was $71,777.42, the city council, on November 6, 1871, passed an ordinance providing for another issue of bonds to pay for water-works, pledging the faith, property and revenues of the city to pay the same and providing an annual tax for that purpose. On February 1, 1872, the city issued $25,000 of water bonds under that ordinance, due in ten years. The bonds fell due in 1882, when they were retired with a new issue of bonds for the same amount, to run for twenty years. When that issue matured, the city, on February 1, 1902, issued $25,000 of new bonds to take up the maturing issue, and those bonds are now outstanding and unpaid, bear interest at five per cent per annum, payable annually, and are due in 1922.

On December 27, 1900, the city council passed an ordinance providing for extending and enlarging the existing water-works and issuing $40,000 of certificates to pay for such extension and enlargement. The certificates were to be dated January 1, 1901, to be of the denomination of $500 each, numbered from 1 to 80, inclusive, maturing $1000 January 1, 1903, and $3000 on January 1 of each year thereafter until 1916. The ordinance fixed water rates and provided for paying into the water fund the proceeds from the operation of the system. The certificates were to be payable out of the water fund and the special taxes which might be annually levied and available for the purpose. The certificates were issued as provided in the ordinance.

On December 2, 1903, the city entered into a contract with the People's Power Company for furnishing electric lights to the city, and under that contract, as extended, the power company is to furnish such lights to February 6, 1909, and the city is to pay $65 per light, payable monthly.

On November 13, 1905, the city made a contract to purchase a pumping engine for $24,990, to be paid out of the water-works contingent fund of 1903, the water-works surplus fund of 1904, and the water-works construction surplus fund appropriated in 1905 and on hand and to accrue to said funds during said fiscal year. It is inferable from the ordinance and contract that an amount equal to the contract price was on hand in these several funds and available for payment, and the bill does not show the contrary.

On January 1, 1906, an ordinance was passed authorizing the mayor and finance committee to borrow not to exceed $2500 to buy a hook and ladder truck, and under that ordinance the mayor entered into a contract with a company which agreed to furnish a hook and ladder truck, for which the city was to pay $1960 within thirty days after delivery.

On May 8, 1906, the city made a contract with a construction company for an addition to the city pumping station, by which the city was to pay in orders on the water-works fund of the city for the year 1906, when collected, $6565 and $883.

The indebtedness created by the issue of bonds on February 1, 1872, amounting to $25,000, was in excess of the constitutional limit and the bonds were void. That indebtedness still exists, and unless the complainants are barred from equitable relief by their own *laches* they are entitled to have the payment of the bonds enjoined. The only question is whether the complainants have stated a case which entitles them to relief in a court of equity.

It is undoubtedly true that the payment of interest by the city for a long term of years and the refunding of the debt by new issues of bonds have had no effect to render the present bonds valid, (*Stebbins* v. *Perry County,* 167 Ill. 567,) and that the city could defend against the collection of the bonds, but the complainants are asking the court to enforce and protect their individual rights and equities, and the general rule is, that nothing can call a court of equity into activity but conscience, good faith and reasonable diligence. Ordinarily, if a city has a right to refuse to pay an obligation on account of its illegality a tax-payer has a right to compel the city to do so, and it ought to be a very strong case which would bar relief in equity. In this case it cannot be denied that the delay of the complainants in enforcing their rights has been most unreasonable. They have stood by without protest while bonds have been issued, and not only annual payments of interest have been made, but bonds have matured and new bonds have been issued and disposed of. Thirty-four years elapsed after the indebtedness was created, and during that time no action was taken to question its legality or to prevent payment or the new issues of bonds. It is true that the purchasers of the bonds were bound to know the law and to take notice of the restrictions of the constitution and the authority of the city to issue bonds; but it is also true that the complainants were bound to know their rights and took no measures to enforce them, and we are inclined to hold with the circuit court that as to the issue of $25,000 of bonds a court of equity ought not to interfere. Ordinarily the defense of *laches* must be set up by plea or answer. (*Spalding* v. *Macomb and Western Illinois Railway Co.* 225 Ill. 585; *Coryell* v. *Klehm,* 157 id. 462.) There are cases, however, where the question may be raised by demurrer; (*Kerfoot* v. *Billings,* 160 Ill. 563;) and inasmuch as *laches* was one ground of the demurrer, which gave an opportunity to amend, and in view of all the averments of the bill, we re-

gard this as a case where the objection may be made by demurrer. We do not regard *laches* as a defense to any other portion of the bill.

As to all the contracts and obligations other than the bonds, it is insisted, in support of the decree, that none of them created any indebtedness, for the reason that they were for current expenses or the moneys were payable out of the water fund and not out of moneys raised by taxation. The argument that no indebtedness is created where the obligation is to pay under some fixed and definite scheme, from some particular fund which is pledged for payment, is sustained by decisions of other courts; but after so many years of judicial construction, extending from the case of *City of Springfield* v. *Edwards,* 84 Ill. 626, to *Lobdell* v. *City of Chicago,* 227 id. 218, it is not necessary, and we would not consider it justifiable, to enter anew upon a discussion of the meaning of our constitution. Courts of the highest standing in other States have regarded the word "debt" as a term of variable and flexible meaning and have been able to construe it as meaning something different from the common understanding. They have been unable to see any line of demarkation between the appropriation, by a municipality, of taxes which have been already levied and are legally certain to reach the treasury, where the appropriation operates only to assign the fund without creating any obligation on the part of the municipality, and a contract by which a municipality obligates itself to make levies in the future and appropriate the same to a designated object. Those courts follow the cases mentioned in *City of Springfield* v. *Edwards, supra,* in which the opinion of the court was delivered by Mr. Justice Scholfield, a member of the convention which framed our constitution. It was there said that this court could only yield assent to the rule recognized by such authorities with these qualifications: "First, the tax appropriated must at the time be actually levied; second, by the legal effect of the contract

232—7

between the corporation and the individual, made at the time of the appropriation, the appropriation and issuing and accepting of a warrant or order on the treasury for its payment must operate to prevent any liability to accrue on the contract against the corporation." In that case, rules of construction were stated which have been consistently and uniformly adhered to, and from which we have no disposition to depart in order to promote schemes which may seem to be desirable or beneficial. The provision of the constitution in question imposes no limit upon the power of taxation and the legislature may authorize municipalities to raise moneys sufficient for their needs, but the constitution does prohibit an indebtedness beyond a certain limit, and it must be enforced according to its plain meaning. If public officials feel that they are unduly hampered in the execution of plans for the public good, the remedy is not to be found in destroying the limitations of the constitution.

By the ordinance of December 27, 1900, certificates to the amount of $40,000 were to be issued, payable out of the water fund and the special taxes which might be annually levied and available for the purpose. The city was possessed of an income-producing system of water-works, and the certificates were issued for the extension and enlargement of that system. The ordinance fixed water rates and provided for paying the proceeds of the system into the water fund. The case is the same, in principle, as the case of *City of Joliet* v. *Alexander,* 194 Ill. 457, and the certificates were issued under the authority of the same act there under consideration. It was held that the issuing of obligations payable out of a particular fund creates an indebtedness if the fund is an existing, established income belonging to the municipality. Every indebtedness is payable out of some fund, and it is immaterial, on the question whether an indebtedness is created, that the obligation is payable out of a particular fund. Tax-payers are interested in all funds of the city, regardless of the source from which

they come,—whether from licenses, taxation or furnishing water to individuals. In this case the entire proceeds of the existing water-works system were pledged to secure payment of the certificates and they created an indebtedness against the city. The case is not like that of *Village of East Moline* v. *Pope,* 224 Ill. 386, where the scheme was to erect and establish a new system of water-works. It was there said, in accordance with the principles of *City of Joliet* v. *Alexander, supra,* that if nothing but the income from the water-works had been pledged or could be reached the bonds would not create a debt, and in that case relief was granted because of the provision for a special tax. A city may acquire a system of water-works by pledging the income until it shall pay for the system, and no indebtedness is created. The same rule might apply to some definite extension of water-works where the income of the extension could be separated and applied to payment, but an obligation to pay with the income of property already owned by a city is not different from an obligation to pay with any other funds, so far as the question whether the transaction amounts to a debt is concerned. In the cases of *City of Springfield* v. *Edwards, supra, Prince* v. *City of Quincy,* 105 Ill. 138, and *Prince* v. *City of Quincy,* 128 id. 443, it was held that when the limit has been reached a municipality is prohibited from making any contract whereby an indebtedness is created, even for the necessary current expenses in the administration of the affairs and government of the corporation. The city so indebted must carry on its corporate operations upon the cash or pay-as-you-go plan, and not upon credit to any extent or for any purpose.

The contract of December 2, 1903, with the People's Power Company for furnishing electric lights to the city, to be paid for monthly, was void and created no obligation against the city. The contract was not different, in principle, from the one involved in *City of Chicago* v. *McDonald,* 176 Ill. 404, where it was held that a contract by a

city for the removal of garbage, which called for monthly payments as the work progressed, created a debt within the meaning of the constitution. Exactly the same kind of a case as this was presented in *City of Chicago* v. *Galpin,* 183 Ill. 399, where it was held that payment under a contract by which a specified number of street lamps were to be furnished and kept lighted and payments to be made at the end of each month, at a specified price for each lamp, would be enjoined at the suit of a tax-payer where the city was indebted beyond the constitutional limit.

The averments of the bill concerning the contract of November 13, 1905, are not sufficient to show that there was no money on hand to pay the amount of the contract. The ordinance recited that there were appropriated and available in the funds mentioned therein from the income of the water-works, sums amounting to $27,000, which was more than the amount of the contract, and if that is so, the contract did not create a debt.

The ordinance of January 1, 1906, by which the mayor and finance committee were empowered to borrow not to exceed $2500 to buy a hook and ladder truck, was null and void and the contract of the mayor was illegal.

The contract of May 8, 1906, with the concrete construction company, provided for payments to be made by orders on the water fund when collected, and not from moneys already on hand. That contract created a debt.

The bill stated a case which entitled the complainants to relief as against those contracts and obligations which we have held created debts of the city, and the court erred in sustaining the demurrer and dismissing the bill.

The decree is reversed and the cause is remanded to the circuit court for further proceedings in accordance with the views herein expressed.    *Reversed and remanded.*