E. J. FLINN, Appellant, v. JAMES GILLEN ET AL.—10 S. W. (2d) 923.

Division One, July 30, 1928.

*W. D. Bush* and *Clarence S. Palmer* for appellant.

*Harris L. Moore* and *John W. Moore* for respondents.

LINDSAY, C.—The plaintiff, as assignee of a special tax bill issued by the city of Excelsior Springs, a city of the third class, in payment of street paving, sought to enforce the same as a lien upon the property of defendant. The only defense made was that the contractor constructing said improvement was a foreign corporation, organized under the laws of the State of Delaware, and had not complied with the laws of the State of Missouri concerning foreign corporations doing business in this State and was not licensed to do business in this State. The answer of defendant pleaded the character of the contractor as a foreign corporation, which had not complied with the laws of this State, and the evidence so showed.

The plaintiff in his reply denied that he had any knowledge of the status of the contractor; alleged that the contract had been fully performed, and that the contractor had no interest in the tax bill; that the defendant had filed with the city clerk of said city notice that he desired to pay the tax bill to be issued against his property, in five annual installments; that plaintiff had examined the record of the proceedings with reference to said contract, and had seen the request of defendant that his tax bill should be made payable in installments, and relying upon the conduct of the defendant therein, had purchased said tax bill and made payment therefor, and that the defendant is now estopped from asserting the invalidity of said tax bill. Plaintiff in his reply further alleged that he had no interest in the contracting company—"The Southwest Company, Engineers and Contractors;" that the city, by legislative action, had made and delivered said tax bill and had a right to issue said tax bill; and denied that the validity of the same could be attacked collaterally. He further alleged that he is a resident of the State of Missouri, and that without any knowledge that the contractor was a foreign corporation he purchased the tax bill relying upon the conduct of defendant, and authority of the city to award the contract and issue the tax bill, and pleaded that to declare said tax bill to be void on account of the incapacity of said contractor would amount to confiscation of plaintiff's property, and impairment of the obligation of the contract, evidenced by said tax bill by legislative enactment, in violation of Section 30 of Article II and of Section 15 of Article II of the Constitution of the State of Missouri.

The evidence showed that the contract in question and the construction of the improvements thereunder was not a single or isolated transaction, but that the contractor had obtained and performed numerous other like contracts.

1052

Certain contentions are made by counsel for plaintiff in consideration of which it is urged that the court erred in holding the plaintiff was not entitled to recover. Counsel say that it was the duty of the council of the city to award the contract to the lowest and best bidder; and, that this duty is not nullified by the provisions of Sections 9790-9793, Revised Statutes 1919. If this argument be given its necessary and ultimate effect, it means that if a foreign corporation, not licensed to do business in this State, is found to be the lowest bidder for the construction of a public improvement, and also the best bidder in the sense of resources and facilities for performance of the work to be done, then, the duty is laid upon the city council of awarding the contract to such foreign corporation, although it is without legal authority to transact the business involved in the construction of the improvement called for by the contract. Our attention is called to State ex rel. v. McGrath, 91 Mo. 386; Johnson v. Duer, 115 Mo. 366; Clapton v. Taylor, 49 Mo. App. 117; Collins v. Jaicks Co., 279 Mo. 404. These are cases in which there was sustained the exercise of power and discretion of the awarding body or officer; but in none of them was there involved the question of legal status of the bidder, or, whether the contractor or bidder had legal capacity to transact the business at all. Allied to the foregoing is the further contention, that the statutory requirements, to be complied with by the foreign corporation as a condition precedent to its right and authority to do business in the State, do not apply to contracts made by the State or by one of its governmental agencies. The ultimate and necessary effect of this argument would be that because the city is a governmental agency, it may, in entering into a contract with a foreign corporation, disregard the question whether such corporation has been authorized by the State to do the business of the kind contemplated; and, it would follow on the same ground, that such foreign corporation, because its contract is made with a municipality, and the business to be done thereunder is for a municipality, for that reason, is not required to comply with the statutory requirements, in order that its contract may be valid and enforcible.

Certain of the acts of a municipal corporation in the construction of public improvements are legislative and purely governmental in character. The determination that an improvement is necessary, and the character of the improvement, and the extent and boundaries of the improvement district, are acts legislative in character. The carrying out however of these legislative purposes, in respect to the paving of streets and the like, is ministerial, or *quasi*-proprietary, rather than legislative. Accepting a bid and awarding

contracts for the construction of a public improvement, are not legis-lative acts. [McCoy v. Randall, 222 Mo. 24. 41; Morley v. Weakley, 86 Mo. 456.] "A municipal corporation on which is conferred the power to establish public streets, and, when established, to construct them for public use, in the exercise of that power acts in two capaci-ties, first, governmental; second, ministerial." [Ely v. St. Louis, 181 Mo. 729.] Further on, in the same opinion, illustrations are given of acts of the city which are clearly governmental and legislative, as the establishing of a street, and determining the width thereof and the character of its improvement, and also, those things done when the city undertakes the work of constructing the improvement, in such street, acts done in its ministerial capacity. [See, also, Barree v. Cape Girardeau, 197 Mo. 382; Cassidy v. St. Joseph, 247 Mo. 197; Brightwell v. Kansas City, 153 Mo. App. l. c. 526.] The principle of the common law that the sovereign is not bound by general terms of statutes which would restrict his powers. does not apply to cities in the exercise of their municipal powers, that is, the exercise of powers ministerial or proprietary in character. In Coun-ty of St. Charles v. Powell, 22 Mo. 525, it is said, l. c. 528: "The immunity, however, it seems, was, even at common law, an attribute of sovereignty, only, and did not belong to the municipal corporations or other local authorities established to manage the affairs of the political subdivisions of the State." [See, also, Hunter v. Pinnell, 193 Mo. 142; Palmer v. Jones, 188 Mo. 163; Lumber Co. v. Craig, 248 Mo. 330; Dunklin County v. Chouteau, 120 Mo. 577.]

Under a contention similar to what has already been mentioned, counsel for plaintiff argue that awarding the contract to the con-tractor and issuing the tax bills are public acts and can-not be attacked collaterally, as between third parties. Among the cases cited in support of this are Heman v. Schulte, 166 Mo. 417; Dennison v. City of Kansas, 95 Mo. 416; He-man Construction Co. v. Lyon, 277 Mo. 628; Heman v. Allen, 156 Mo. 534; Prior v. Construction Co., 170 Mo. 439; Young v. St. Louis, 47 Mo. 492. In these cases the attempted collateral attack was upon an act of the city, legislative in character, and for that reason the attack failed. Those cases are not in point upon the particular is-sue here made, based upon the acceptance of a bid and the letting of a contract, which are not legislative acts.

Our attention is also called to Hess Ventilating Co. v. Grain Eleva-tor Co.. 280 Mo. 163. In that case there had been a judgment ren-dered in a suit for money due upon account, in favor of a foreign corporation, and in the subsequent collateral proceeding it was held that the right of the plaintiff in that suit to maintain the action was conclusively established in the rendition of the judgment, not ap-

pealed from. It is offered as authority for the claim that the action of the city council in awarding this contract is conclusive here.

The law in force required the making of a contract between the city and the contractor for the construction of the improvement. [Laws 1921, 1st Ex. Sess. pp. 112-118.] The making of a contract is an essential step to be taken, preliminary to the doing of the work, and the issuance of a special tax bill. Undoubtedly if a contract for the construction of a public improvement has been let, and an assessment levied to pay the contract price, the validity of such contract is essential to the validity of the assessment. [1 Page and Jones on Taxation by Assessment, sec. 483; Sanders v. Mayor of Gainesville, 141 Ga. 441.] It is settled by the decisions of this court that a foreign corporation which has failed to comply with the provisions of Sections 9790-9793, Revised Statutes 1919, before undertaking to transact business in this State, cannot "maintain any suit or action, either legal or equitable, in any of the courts of this State, upon any demand, whether arising out of the contract or tort," and this incapacity results not solely from the statutory provision just quoted. By the provisions of Section 9790 it is not "authorized or permitted to transact business in this State," before it complies with the statutory requirements. Its contracts made before such compliance, are void. [Tri-State Amusement Co. v. Amusement Co., 192 Mo. 404; Chicago Mill & Lumber Co. v. Sims, 197 Mo. 507; Amalgamated Zinc & Lead Co. v. Bay State Zinc & Mining Co., 221 Mo. 7; Parke, Davis & Co. v. Mullett, 245 Mo. 168; Booth v. Scott, 276 Mo. 1; United Shoe Machine Co. v. Ramlose, 210 Mo. 631; State ex rel. v. Cox, 306 Mo. 1. c. 552; Ehrhardt v. Robertson Bros., 78 Mo. App. 404; First National Bank v. Leeper, 121 Mo. App. 688; Wilson-Moline Buggy Co. v. Priebe, 123 Mo. App. 521; Frazier v. Rockport, 199 Mo. App. 80; Bank v. Smith, 202 Mo. App. 133; Pacific Lumber Co. v. Jamison Lumber Co., 247 S. W. (Mo. App.) 225.]

In the briefs on both sides there is reference to the ruling in Hogan v. City of St. Louis, 176 Mo. 149. In that case a foreign corporation which had not complied with the law, entered into a contract to furnish light to the city. The suit was one to enjoin the city from carrying out the contract, on the ground, among other things, that the company was a foreign corporation. The holding was that merely submitting a bid and obtaining a contract was not "transacting business" within the meaning of the statute in reference to foreign corporations, and that it was permissible for the company to make such contract, but that the law must be complied with before undertaking to transact the business involved in the performance of the contract. The case was referred to with approval in Wulfing v. Cork Co., 250 Mo. 723, and also in Frazier v. Rockport, 199 Mo. App. 80. These cases are referred to, although we see nothing in them

which, under the facts in this case, affects the ruling which must be made herein.

The evidence shows that the corporation which had this contract had others, and it is conceded that at no time had it complied with the statute. The ruling has been uniform that under such circumstances its contract was void, and a compliance with the law after making the contract and undertaking to transact business, does not authorize such corporation to maintain a suit to give effect to such void contract.

The failure to enter into a valid contract cannot be held to be a mere irregularity in the proceedings of the city. In 44 Corpus Juris, page 338, section 2507, we find the following: "Awarding the contract to a particular bidder is an acceptance of his bid. Accepting a bid and awarding the contract are not legislative acts. It has been both affirmed and denied that the awarding of the contract is a ministerial act. Likewise it has been both affirmed and denied that the awarding of the contract partakes of a judicial character." Accepting the bid and awarding a contract do not constitute a judicial determination of the legal status or legal capacity of the bidder. The discretion of the council is exercised and operates upon the questions of fact as showing that the bidder is the lowest bidder and the best bidder, and it is not exercised upon the question whether the bidder, a foreign corporation, has complied with the law applicable to such corporations. We can see no reason and we are cited to no authority, which, in our view, requires us to hold that the acceptance by the city council of the bid of a foreign corporation and entering into a contract therewith, must be taken as conclusive that the contract is valid, and we hold this to be so, because, the discretion of the council is not exercised upon the question of the legal right of the foreign corporation to transact business in the State.

A similar case was decided in Kentucky, in Fruin-Colnon Contracting Co. v. Chatterson, 146 Ky. 504. That suit was brought by the contracting company, and not by an assignee, upon an "apportionment warrant," to enforce a lien upon defendant's property to satisfy the cost of an improvement made. It was held that the failure of the contracting company to comply with the statute of Kentucky before making a contract and completing the work under it, denied to the company the right to recover the cost of improvement. The Kentucky statute contained the provision that "it shall not be lawful for any corporation to carry on any business in the State until it shall file in the office of the Secretary of State a statement," etc. The question whether the defendant was estopped is discussed at length, and decided against the contractor. The particular pro-

1056

visions of this Kentucky statute in reference to accepting the bid and awarding the contract, are not gone into. The conclusion was reached that the prohibition in the statute against the corporation doing business in the State also prohibited the enforcement of contracts made by it.

Counsel for plaintiff further urge that because the contract, although illegal, has been fully executed by the parties, that as a result thereof, a new property title vested in one of them, in this case the contractor under the tax bill, and on that ground, the contractor could maintain a suit to recover or enforce such new title or right. Under this, our attention has been called to what was said in Fletcher's Encyclopedia Corporations, section 5963; and citation is also made to a number of cases decided by our courts of appeals: Good Roads Machinery Co. v. Broadway Bank, 267 S. W. 40; Handlan-Buck Mfg. Co. v. Wendelkin Construction Co., 124 Mo. App. 349, and other cases decided by the courts of appeals. These cases are not applicable because in those cases the aid or relief given to the party was given because it could be done without giving force and effect to the illegal contract itself.

In the case at bar, to hold that the contracting company under the tax bill issued, could maintain the suit against the defendant, would necessarily result in giving effect to the void contract. The distinction was pointed out in United Shoe Machinery Co. v. Ramlose, 231 Mo. 508. In that case the court in considering the principle that the parties were not entitled to recover on a contract made in violation of the statute, said, l. c. 532: "That rule never applies, except in those cases where the maintenance of the suit would necessarily result in the courts giving force and effect to the void contract, or where the contract is tainted with fraud and immorality." After discussion of certain cases involving a somewhat contrary situation, it was further said, l. c. 537: "From these cases it will be seen that this court has uniformly lent its aid to the protection of the rights of parties growing out of illegal and void contracts, wherever it could do so without giving force and effect to the illegal contract itself." Under the view we have heretofore stated that a valid contract was an essential element, a condition precedent to the issuance of a valid tax bill; and under the further view that in this instance the contract was void, and its making not merely an irregularity, we hold that the property owner in these proceedings by the city, in invitum, as to him, is not concluded herein by the action of the council.

The plaintiff sues as assignee of the tax bill, but his right to maintain this suit is not superior to the right which the contracting cor-

poration would have had in a suit brought upon the tax bill. [Ehrhardt v. Robertson Bros., 78 Mo. App. 404; Chicago Mill & Lumber Co. v. Sims, 197 Mo. 1. c. 512.] The rule is stated in 9 Fletcher, Cyclopedia Corporations, Section 5965, as follows: "It is evident that if the effect of such a statute is to make the contract null and void as to the corporation, to permit an assignee of such contract or rights to sue and enforce them would in many instances enable the foreign corporation to escape the legal consequences of its violation of the statute, and would be offensive to the public policy of the State. Consequently such an assignee is held to stand in the same position as the corporation, and to have no greater rights than it had. Therefore, if the contract or act under which the rights of the assignee arise is illegal, according to the better reasoning the assignee has no more right to enforce it than the corporation would have had. Accordingly, where a foreign corporation assigning a chose in action could not maintain an action, on account of its non-compliance with the statutes of the State regulating the right of foreign corporations to do business therein, its assignee cannot do so." [See, also, 14a C. J. 1305, sec. 4009.] There is nothing in this case which takes it out of the rules stated. The proceedings for the construction of public improvements for the payment of which tax bills are issued are *in invitum*. [Schulte v. Currey, 173 Mo. App. 578.]

The mere fact that the defendant filed with the city clerk a notice that he desired the tax bill to be issued against his property to be payable in five annual installments, and that the plaintiff knew this, does not operate as an estoppel upon defendant. [Wetterau v. Trust Co., 285 Mo. 565-566.]

It is also urged that the judgment of the trial court violates the constitutional provisions against impairing obligations of contracts and taking property without due process of law, and under that contention, certain Federal decisions are cited. The theory advanced is, that a ruling that the validity of the city ordinance may be attacked collaterally, "would impair the validity of a contract in the hands of an innocent holder for value of a tax bill negotiable by statute, and would deprive the plaintiff of his property without due process of law." We do not see the application of the cases cited, to the case at bar. The argument of counsel runs upon the theory that this is a suit to enforce a lien based on the tax bill, not on the contract. But, if we are correct in holding that the assessment evidenced by the tax bill, to be valid, must have back of it a valid contract for the construction of the improvement, and, if we are further correct in holding that the contract here in issue is void, there does not arise the question of impairment

1058

of the obligation of a contract. The plaintiff, in taking the assignment of the tax bill from a corporation, was obliged to take notice of the legal limit of the powers of that corporation. [7 R. C. L. p. 675.]

For the reasons indicated the judgment is affirmed. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion of LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.