CITY OF CAMPBELL, MO., et al. v. ARKANSAS–MISSOURI POWER CO.

No. 9188.

Circuit Court of Appeals, Eighth Circuit.

Jan. 7, 1932.

Rehearing Denied Feb. 19, 1932.

Frank H. Sullivan, of St. Louis, Mo. (James C. Jones, Lon O. Hocker, and Willard A. McCaleb, all of St. Louis, Mo., on the brief), for appellant Fairbanks, Morse & Co.

John H. Bradley, of Kennett, Mo., and C. D. Bray, of Campbell, Mo., for appellants City of Campbell and its officers.

D. C. Chastain, of Butler, Mo., T. R. Ely, of Kennett, Mo., and Gardner Smith and A. Z. Patterson, both of Kansas City, Mo., on the brief), for appellee.

Before VAN VALKENBURGH, BOOTH, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

In this case, appellee as plaintiff brought suit to enjoin the city of Campbell, a Missouri city of the fourth class, its executive officers, and Fairbanks, Morse & Co., a corporation, from carrying out the provisions of a certain contract which the city had previously entered into with Fairbanks, Morse & Co. for the purchase of certain machinery for a municipal light plant, and to restrain the city from operating such a plant in competition with the appellee, because of the alleged illegality of that contract. The parties will be referred to as they appeared in the lower court.

Plaintiff is an electric power company engaged in the generation of electricity and the transmission of electric current into various municipalities for sale for private and public use. It is the owner of a franchise granting it the right to construct and operate an electric light plant and distribution system within the city of Campbell. This franchise was granted in January, 1915, for a period or term of twenty years. Pursuant to the authority of this franchise, it has erected an electric lighting system, which it owned and was operating at the time of the commencement of this suit. The plant has a value in excess of $113,000. On May 12, 1925, the city entered into a contract with plaintiff for lighting its streets for a period of ten years, so that the franchise and this lighting contract would expire in the year 1935. After entering into this street lighting contract in 1925, plaintiff, for the purpose of carrying it out, expended some $17,000 in improvements, changes, and betterments. On February 11, 1930, pursuant to an ordinance duly passed, a special election was held in the city on a proposal to "issue bonds to the amount of $20,000 for the purpose of creating an electric light plant to be exclusively owned by said city." At this election the proposal was carried, bonds were duly authorized by proper ordinance in the sum of $20,000, and in due course were issued and sold. On April 8, 1930, the city passed an ordinance providing for the making of a contract between the city and Fairbanks, Morse & Co. for the purchase from that company of certain machinery for the contemplated plant for

the sum and price of $62,366.40. This purchase price was to be paid in seventy-two monthly installments of $866.20 each; each installment being evidenced by an instrument called a pledge order, and each, omitting the payment date and formal matters, being in the following words:

"Treasurer of Said City.

"Pay to the order of Fairbanks, Morse & Co., Inc., Eight Hundred Sixty-six and 20/100 Dollars for payment on contract of April 12, 1930, out of the Light and Power Fund with interest at six per cent. (6%) per annum from maturity until paid. This is not a general obligation of the said City, but is a special obligation payable only out of the net revenues of the Light and Power plant of the City of Campbell, Missouri, in accordance with the provisions of said contract. This order is one of a series of seventy-two orders of even date.

"R. M. Jones, Mayor.
"Attest:
"[Seal.] D. A. Snider, City Clerk."

The ordinance authorizing the purchase of the machinery contained provisions that the contract "shall not constitute a general obligation of the city, but shall be made to Fairbanks, Morse & Company, a corporation, only, from the net income of the City's electric light and power plant after paying the necessary operating expenses of said plant, and from no other fund, asset or property whatsoever of the City of Campbell, Missouri, which fund is hereby set aside for said purpose and no other; and said fund is hereby pledged as security for payments to be made under said contract." The contract as executed provided that the obligation to pay the deferred installments of the purchase price should not be general obligations of the city, but only special obligations payable from the net revenues of the light and power plant. Net revenues were defined as the balance of the gross receipts of the municipality's light and power plant after the payment of the legitimate and necessary expenses of the operation of the plant, plus interest on the $20,000 light bond issue. It contained a further provision that: "The municipality agrees to adopt resolutions providing for the creation of a special fund into which all receipts for the product or service of said plant shall be deposited *and to credit such fund at the regular established rates for all product or service of said plant used by the city or any department thereof for any and all public purposes.*" (Italics ours.)

From the proceeds of the sale of the $20,-000 bond issue, the city constructed and installed a distribution system consisting of poles, wires, lights, and so forth, and also constructed a power house and engine foundations. The defendant Fairbanks, Morse & Co. made delivery of the machinery covered by its contract, which was installed in the power house and upon the foundations constructed by the city, and the plant was put in operation by the city in November, 1930, and was in operation at the time of the trial of this cause in the lower court.

The lower court held that the contract between the city and Fairbanks, Morse & Co. was invalid, on the ground that there was thereby created an indebtedness exceeding that allowed by the Missouri Constitution, and entered decree in favor of the plaintiff.

On this appeal, defendants contend: (1) That the plaintiff had no right to maintain this suit; and (2) that the court erred in holding that the contract between the city and Fairbanks, Morse & Co. created an indebtedness within the inhibition of the Missouri Constitution. The parties are agreed that if the contract involved created an indebtedness in the amount named as the consideration therefor, that such indebtedness was in excess of that which the city could lawfully incur under the inhibition of the Missouri Constitution against the creating of indebtedness.

■ It is urged that, inasmuch as the plaintiff's franchise was not an exclusive one, it had no right to maintain this suit for injunctional relief. The plaintiff, however, had a franchise under which it was entitled to maintain and operate its lighting system in the city of Campbell, and it also had a contract with the city for street lighting. The fact alone that the plaintiff had this franchise would, of course, not prevent the city from erecting and maintaining a municipal light plant, if, in doing so, it did not exceed its power and authority. As the owner of this franchise, however, the plaintiff was entitled to relief against the illegal acts of others who might assume to exercise the privilege conferred upon it by its franchise. A franchise is property, and, as such, is under the protection of the law, and without express words it is exclusive as against all persons acting without legal sanction. True, plaintiff's franchise was not exclusive in the sense that the city might not grant similar right to another, yet it was exclusive against any one who assumed to exercise the privilege granted the plaintiff, in the absence of authority or

in defiance of law. Volume 5, Pomeroy's Equity Jurisprudence § 2017; Gallardo v. Porto Rico Light & Power Co. (C. C. A.) 18 F.(2d) 918; Patterson v. Wollmann, 5 N. D. 608, 67 N. W. 1040, 33 L. R. A. 536; Puget Sound Traction L. & P. Co. v. Grassmeyer, 102 Wash. 482, 173 P. 504, L. R. A. 1918F, 469; Lindsley v. Dallas Consol. Street Ry. Co. (Tex. Civ. App.) 200 S. W. 207; Northern Texas Utilities Co. v. Community Natural Gas Co. (Tex. Civ. App.) 297 S. W. 904; Brooklyn City Ry. Co. v. Whalen, 191 App. Div. 737, 182 N. Y. S. 283, affirmed 229 N. Y. 570, 128 N. E. 215; Farmers' & Merchants' Co-op. Tel. Co. v. Boswell Tel. Co., 187 Ind. 371, 119 N. E. 513; Princeton Power Co. v. Calloway, 99 W. Va. 157, 128 S. E. 89; Citizens' Electric Illum. Co. v. Lackawanna & W. V. P. Co., 255 Pa. 145, 99 A. 462; Lincoln Traction Co. v. Omaha L. & B. R. Co., 108 Neb. 154, 187 N. W. 790, 28 A. L. R. 960.

We are clear that the plaintiff, as the holder of this franchise to maintain and operate the plant in defendant city, was entitled to protection against all illegal competition.

■ It is urged that the plaintiff's street lighting contract was illegal because the contract was not ratified by the voters, nor authorized by ordinance. The contention is not tenable. Section 7028, Revised Statutes of Missouri 1929, provides that: "Provided still further, that nothing herein contained shall be so construed as to prevent the board of aldermen from contracting with any person, persons or corporation for furnishing the city with gas or electric lights in cities where franchises have already been granted, and where gas or electric light plants already exist, without a vote of the people."

Neither was there any requirement that the contract should be based upon an ordinance, and the above statute specifically provides that it may be entered into without a vote of the people. Under the Missouri statutes and decisions, we think this contract a valid one. McCoy v. Randall, 222 Mo. 24, 121 S. W. 31; Grant City v. Salmon, 221 Mo. App. 853, 288 S. W. 88; Flinn v. Gillen, 320 Mo. 1047, 10 S.W.(2d) 923. The execution of this contract was one of the municipal or private business functions of the city. The resolution authorizing the contract provided that it should be subject to a ratification at a special election. It was, however, not such an act as required ratification. The resolution did not in terms provide for its submission to popular vote. It went into

effect, was recognized by both parties, and was operative since 1925. Plaintiff was therefore entitled to perform its contract free from illegal competition.

 It remains to consider whether the contract created an indebtedness. If it did not create such indebtedness, then the acts of the defendants were authorized, and the plaintiff had no just grounds for injunctional relief. It is to be observed that the city's plant consisted of its distributing system, power house, engine foundations, and two Diesel engines. The distributing system power house and engine foundations were constructed and installed by the city and paid for by it with the proceeds of the $20,000 bond issue. The contract with Fairbanks, Morse & Co. therefore was not for a completed plant, but only for certain machinery which went into the plant. This contract by which there was to be paid to Fairbanks, Morse & Co. $62,366.40, required the appropriation of the net revenues, after payment of necessary operating expenses and interest on the $20,000 light bonds, to the payment of this purchase price. It also required the city "to credit to such fund (special fund) at the regular established rates for all product or service of said plant used by the city or any department thereof for any and all public purposes." This clearly contemplated that the city should pay into this fund for the services of the plant in lighting the streets, the regular established rates for such service.

In Hight v. City of Harrisonville, 41 S. W.(2d) 155, 159, the Supreme Court of Missouri, in considering this identical provision of a very similar contract, said: "In other words, provision is made for the city to purchase from itself, at a profit, power for its water plant, lights for its streets, and current for other purposes. The record shows the city has no funds available for such purposes. If it purchases its own current, funds for that purpose must come from funds raised by taxation, or from a fund which must be replenished by funds raised by taxation. In this situation, the parties resorted to the subterfuge of fixing the rate the city must pay itself for current without in express terms requiring the city to use its own current. Defendants do not contend that the city will not use its own current to light its streets and for power to operate its water plant. It would be idle for them to do so. The city would not purchase current from others when it had current of its own for sale. * * * It is evident from a consideration of the contract as a whole that it was the intention of both parties to require the city to pay into the special fund and thereby pay on the purchase price of the engines and equipment a sum of money equal to the cost of current used by the city at the 'regular established rate.' It is also evident that the parties knew this payment by the city must be from funds raised by taxation, or from a fund which must be replenished by funds raised by taxation. Therefore, they resorted to this subterfuge in an effort to evade the constitutional prohibition. The trick is so transparent that we do not wonder at the failure of defendants to undertake a defense of this provision of the contract."

The Supreme Court of Missouri held that, within the meaning of the Missouri Constitution, this form of contract created a debt. The construction of the Missouri Constitution by the Missouri Supreme Court will, of course, be followed by this court. There is, however, further reason for holding that this contract resulted in creating a debt. The machinery sold to the city, as has been pointed out, does not constitute the entire plant which generates and distributes the electric current and produces the revenue for such service. It required in addition to this machinery the equipment and the power house owned by the city. The purchase price, under the provisions of this contract, is not to come alone from the earnings of the property sold. Under such circumstances, the obligation to pay the income of the property other than that purchased is not different from an obligation to pay with any other funds. Bell v. City of Fayette, 325 Mo. 75, 28 S. W.(2d) 356, 360; Schnell v. City of Rock Island, 232 Ill. 89, 83 N. E. 462, 14 L. R. A. (N. S.) 874; Feil v. City of Cœur d'Alene, 23 Idaho, 32, 129 P. 643, 43 L. R. A. (N. S.) 1095; City of Ottumwa v. City Water Supply Co. (C. C. A.) 119 F. 315, 59 L. R. A. 604; Hesse v. City of Watertown (S. D.) 232 N. W. 53; State v. McMillan, 12 N. D. 280, 96 N. W. 310; Wilder v. Murphy, 56 N. D. 436, 218 N. W. 156.

The contract in question requires the use of the earnings of the entire property. In Bell v. City of Fayette, supra, the court said: "It will be noted that the distinction is whether any other property of the city is liable for the payments or whether the purchase price of such improvement is to be paid for wholly out of the earnings of the improvement."

Notwithstanding the skillful attempt to evade the constitutional inhibition against the creation of indebtedness, we think it clear that the subterfuge resorted to does not have that effect, and that the lower court properly held that the contract was void. The judgment appealed from is therefore affirmed.