VIKING EQUIPMENT COMPANY, APPELLANT, v. CENTRAL HOTEL COMPANY ET AL., RESPONDENTS.—91 S. W. (2d) 94.

Kansas City Court of Appeals. January 27, 1936.

*Blair & Blair, James T. Blair, Jr., Fordyce, White, Mayne & Williams* and *R. E. LaDriere* for appellant.

*Ira H. Lohman* and *H. P. Lauf* for respondent, Jefferson City Realty Co.

*James P. Aylward, James A. Waechter* and *Frank P. Aschemeyer* for respondent, Continental Life Ins. Co. and R. Emmett O'Malley.

TRIMBLE, J.—Plaintiff, a Michigan Corporation, on October 8, 1932, brought this suit in equity against the Central Hotel Company, Inc., the owner of Central Hotel in Jefferson City, Missouri, wherein, *as assignee of a contract*, made on the 4th day of January, 1927, by the said Hotel Company and its President, with J. B. Wilson, a resident of Missouri, to *enter into a contract* (and agreed to guarantee its execution) with a reliable sprinkler construction company, to erect and equip said hotel with a ''wet pipe system of automatic sprinklers,'' it to furnish all labor and material and everything necessary to put the same in efficient working order, and when completed, to be subject to the approval and acceptance of the Missouri Inspection

Bureau, all for the sum of $15,874, the first payment of $3000 thereon to be made as soon as the equipment was approved by said bureau, and the other payments to be represented by notes of $268 each payable monthly in the next forty-eight ensuing months from the date of first payment. On payment of all installments, the equipment would become the property of the Central Hotel Company, Inc. Until full payment be made, the sprinkler equipment should remain the property of said J. B. Wilson. And in case of failure to pay any installment when due, the entire indebtedness should become due, and, in that event, said Wilson should have the right to enter the said building in which the said sprinkler was installed and take out, without legal process, said equipment, and proceed to sell the same as in foreclosure, and apply the proceeds to the unpaid balance due, and apply the remainder, if any, as in matters of foreclosure required.

Alleging that the Central Hotel Company, after paying $12,380, leaving thirteen notes with eight per cent interest after maturity, it set up that there was still owing $3,484 and eight per cent interest from maturity (and also the facts whereby the other parties were defendants), and then the plaintiff prayed for a judgment or decree foreclosing its lien on the aforesaid system of wet pipe sprinklers.

It appears that the defendant, Jefferson City Realty Company, became the purchaser of the hotel property after the Central Hotel Company had been foreclosed under a *second* deed of trust given by it. The defendant, LeRose Operating Company was, under a lease from the owner, Jefferson City Realty Company, operating the hotel at the time this suit was brought.

The defendant, the Continental Life Insurance Company, was the owner of the *first* deed of trust on the hotel, executed prior to the making of the contract herein under consideration. The defendant, R. Emmett O'Malley, Superintendent of Insurance of the State of Missouri, was in charge of the Continental Life Insurance Company as an insolvent, with title to all of its assets including the notes secured by said first deed of trust, under a dcree of the Circuit Court of the City of St. Louis entered May 25, 1934. Each of these three named defendants filed amended answers to plaintiff's second amended petition on which this case was submitted, in which answers they charge that plaintiff, admitted to be a Michigan Corporation, has been doing business in Missouri without license, and is, therefore, without capacity to sue. Defendant O'Malley also set up that the automatic sprinkler device and equipment cannot be removed from the building without substantial injury and damage to it and materially and substantially decreasing the value of O'Malley's security and impairing the lien of the aforesaid deed of trust.

After a hearing and trial before the chancellor on October 4, 1934, the case was taken under advisement until November 23, 1934, when

the chancellor, on said last named date, rendered judgment, finding the issues for defendants and against the plaintiff; and dismissed the bill or suit, with costs adjudged against the plaintiff. Plaintiff, in due and proper time, appealed.

It is shown by the evidence that the *Viking Automatic Sprinkler Company* was the ("reliable sprinkler construction company") which J. B. Wilson selected as the one with whom he agreed to enter into a contract for erecting and installing the hotel's "wet pipe system of automatic sprinklers," (not the Viking Equipment Company, the plaintiff herein) was a Missouri corporation, organized November 15, 1924, but dissolved January 14, 1930. Its stockholders were John B. Wilson, owning five shares, Allen Johnson, owning forty-two shares, and three others owning one share each. Plaintiff, the "Viking Equipment Company," was never licensed to do business in Missouri.

J. B. Wilson, witness for plaintiff, testified that he was unemployed at the time of the trial; that in 1927 he was the president of the Viking Automatic Sprinkler Company of Missouri. He identified the contract made by him with the Central Hotel Company, dated January 4, 1927, and said that it was recorded, as in the petition alleged, on January 22, 1927, with the Recorder of Deeds of Cole County, Missouri. Witness further stated that the Hotel Company sprinkler system was installed by his company, the Viking Automatic Sprinkler Company, the Missouri corporation. He testified that the Viking Equipment Company (the plaintiff herein) financed the installation. He assigned his interest in the contract to it for advancing the money, and he said he assigned, "without recourse," the notes received under the contract, to the plaintiff company. Witness further testified he purchased the sprinkler system from a concern in Michigan and when asked its name, said "I believe it was the Viking Equipment Company." He said that in his opinion, the sprinkler system could be removed without substantial damage to the hotel property.

On cross-examination, witness said that, with reference to the assignment of the contract, he dealt with *Mr. Johnson* (owner of forty-two shares of the Viking Automatic Sprinkler Company, organized as heretofore stated, November 15, 1924, and dissolved January 14, 1930), and that Johnson lived at Hastings, Michigan. He did not know when the contract was completed; the installment of a system, like the one in question, would take "any time under six months." Witness also said he assigned the contract for the erecting, equipping and installation of the sprinkler system in the hotel, to the Viking Equipment Company January 18, 1927, and said contract was accepted by that company on January 19, 1927. He was unable to say why the notes were not accepted until August, 1927. The contract itself was introduced in evidence, and had a notation thereon that it was accepted by the plaintiff, "Viking Equipment Company by E.

A. Johnson, Hastings, Michigan'' on January 19, 1927, and below this appears on the document "1-18-27. This contract assigned to Viking Equipment Co., Hastings, Mich. J. B. Wilson."

Witness, Wilson, described how the sprinkler system was installed in the hotel, i. e. by the use of exposed pipes in every room, with four-inch supply pipes running through the floors and ceilings, there being at least three pipe holes in every room. The fasteners were attached to the ceiling by means of screws where the ceiling is plastered, and in attic and basements, to the joists. There are also some pipes in certain closets, concealed above a false ceiling. The removal of the pipes would leave holes in the walls, floors and ceilings and where screws would be removed.

Mr. Levy, manager of the hotel for the leaseholder thereof, the Le-Rose Operating Company, after testifying to the way the sprinkler system was installed and the character of the installation, said that, in his opinion, to remove the pipes and the sprinklers, would work a substantial injury to the building as a hotel.

No instructions, or declarations of law, were asked or given, and as heretofore stated, the court "found for defendants and against the plaintiff."

Although there are fourteen "assignments of error" in appellant's brief, only two propositions are presented. *First*, under the facts, was the plaintiff, Viking Equipment Company, the entry that really and in fact equipped and installed the sprinkler system in the hotel? It is admittedly a foreign corporation, not licensed to do business in Missouri. And if it installed the sprinkler this was doing business in the State without license. *Second*, did the sprinkler system, regardless of the statements in the contract, but according to the facts, become a part of the realty, so as to affect the security of the Continental Life Insurance Company by the reducing of the value of the hotel building on which its deed of trust was given, if the system were taken out and removed?

Appellant says the action brought herein is a proper one under the laws of Missouri, and cites Wayne Tank Co. v. Quick Service Laundry Co., 285 S. W. 750; Kalb v. Golden Rule Baking Co., 9 S. W. (2d) 840; and General Excavator Co. v. Enery, 40 S. W. (2d) 490. If the facts in the case at bar were as in those cases, no doubt plaintiff would be entitled to recover. But they are so wholly different that they do not decide the question involved herein. In fact, the point thus raised by appellant ignored the questions appearing herein, and merely asserts nothing more than that appellant is entitled to recover.

It is likewise true that the burden of proof is on defendants to show that plaintiff "was doing business in Missouri without a license" and therefore not entitled to bring the suit. The cases cited so hold, and

no complaint can be made of them in this regard. But, as held in the case last cited by plaintiff on this last mentioned point, when the actual facts appear, from which the trier of the facts may find the facts to be different from those pleaded by plaintiff, the latter must produce other evidence to refute those shown by defendants, else they are entitled to a judgment. [Turner v. National Benevolent Society, 224 Mo. App. 463.] It, therefore, is incumbent on us to carefully examine the evidence to see whether the judgment which the chancellor has rendered should be disturbed.

Appellant urges that the State has no power to tax or require a license to transact business which is interstate in its nature, since only Congress has the right to regulate interstate commerce. This is undoubtedly true. [Butler Bros. Shoe Co. v. United States Rubber Co., 156 Fed. 1, 17; Furst v. Brewster, 51 Sup. Ct. Reporter, 295, 232 U. S. 493; Yarborough v. Gage & Co., 334 Mo. 1145, 70 S. W. (2d) 1055.] But again the question recurs, do the facts fit these decisions, and are they in point? Appellant again appears to avoid the real and vital question. Get by this issue safely, then it is easy to say there is no defense left to defendants, unless, perhaps, to O'Malley, State Superintendent, in charge of the Continental Life Insurance Company. But, did the plaintiff engage in interstate commerce merely by selling devices and materials brought into the State, and is now suing on a contract made by someone else for the equipment erected? Or did it, *in fact*, engage in the business of furnishing and equipping the hotel with the device and equipment for which it has received part pay, and is now suing for the balance?

J. B. Wilson, the one who procured this contract from the Hotel Company, swore that the installation of the sprinkler syster was done by the Viking Automatic Sprinkler Company of St. Louis, Missouri, of which he was president; that the *installation* was only financed by the plaintiff, Viking Equipment Company, and that the contract, and notes for the system, were assigned to the last named company for the money advanced, *after the job was done*. It would seem to be apparent that the chancellor did not believe this, in view of his ruling. From a reading of the entire testimony of this witness, it is manifest that he was evasive, contradicted himself, denied knowledge of matters he must have known if he and the company of which he was president, did the work of installing the sprinkler system. Opposed to this witness' unsupported testimony, are the facts that the contract recites it was not to be binding until it was *accepted*; that it was *accepted* on January 19, 1927 (only fifteen days after it was made), by this plaintiff, at Hastings, Michigan, the acceptance *for plaintiff* being made by the same Johnson, who was the majority stockholder in the Missouri company. The contract was *assigned* January 18, 1927, to plaintiff by Wilson, two weeks after it was made, and one day before

it was accepted which was, without doubt, before the work was begun, and unquestionably before it was finished, since the evidence is that it took until sometime in August to complete, at which time the initial payment of $3000 was made to plaintiff and the forty-eight notes, payable at *Hastings, Michigan*, were executed, and at once endorsed "without recourse" by Wilson to the plaintiff, the Viking Equipment Company. Wilson says this company advanced the money to the Viking Automatic Sprinkler Company to complete the work of installing the sprinkler system. This is wholly unsupported by any evidence, nor is it shown that the said Missouri or Automatic Company purchased or paid for any material that went into the job. Inasmuch as the contract recites it was not to be complete until accepted by Wilson and his assigns, therefore, it did not become a contract until the plaintiff, the Viking Equipment Company, accepted it. And that company then undertook to do, and did, in Missouri what Wilson agreed in the assigned contract to do, namely, install in the hotel the sprinkler system, guaranteeing it, retaining the ownership of the material necessary and entering into its installation until fully paid for, and asserting the right to collect the money due from the Hotel Company, which it did, for all except the thirteen payments, and for which suit is now brought to foreclose and take out the sprinkler system. If this is the fact and situation in this case (and there is ample evidence from which the chancellor could, and apparently did, as plaintiff in its brief concedes, find it to be so). Then we have nothing to authorize us to hold to the contrary, and therefore we ought not to reverse the judgment. The facts do not merely involve the sale and transportation of certain devices from Michigan to Missouri, an interstate commerce matter, but show a doing of business in Missouri, for which the State has the right to require a license.

The Viking Automatic Sprinkler Company is making no claim for either money or lien for installing the sprinkler system, hence if it did anything in the way in installing it, of which there is no evidence as hereinbefore stated, it must have done so as agent of plaintiff which had the contract at all times after it was accepted by plaintiff company, which collected all the money that has been paid. And plaintiff is now the only one that claims to be the owner of the sprinkler system which is installed. It would seem to be perfectly clear that J. B. Wilson and his Missouri corporation, the Viking Automatic Sprinkler Company, the majority of the stock of which was Johnson's, were merely foils for the Michigan corporation which, without going to the trouble and slight expense of complying with the laws of Missouri relating to foreign corporations, did the business of installing the sprinkler system without having a license to do so. The chancellor had sufficient facts before him to justify his finding. [Sections 4596, 4597, 4598 and 4599, Revised Statutes Missouri, 1929.] And

in such case, the chancellor's judgment denying right to maintain this suit is correct. [Flinn v. Gillon, 320 Mo. 1047; Booth v. Scott, 276 Mo. 1; Roeder v. Robertson, 202 Mo. 522; Tri-state Amusement Co. v. Forest Park, etc., Amusement Co., 192 Mo. 404.] The contract between Wilson and the Hotel Company, assigned by Wilson to, and accepted by, plaintiff, had in contemplation the installing of the system in Missouri, i. e., the illegal transaction of business in Missouri without a license and a contract assigned to and accepted by plaintiff enabling such a thing to be done, is void and gives no rights thereunder which are enforceable in Missouri. [State ex rel. v. Arthur Greenfield, Inc., 205 S. W. 619, 620; Kansas City Standard Steel Co. v. State of Arkansas for use and benefit of Ashley County, 46 Sup. Ct. Reporter, 59. See also, Western Gas Construction Co. v. Comm. of Virginia, 147 Va. 235, affirmed by Supreme Court of United States in Memorandum Decision, 48 Sup. Ct. Reporter, 319; Browning v. Waycross, 233 U. S. 16; General Railway Signal Company v. Commonwealth of Virginia, 246 U. S. 500.] The fact, if it be a fact, that a part or even all of the work was done by a Missouri corporation acting as agent for the plaintiff, does not make any difference, since plaintiff was, through its agent, nevertheless transacting business in Missouri, and had no license to do so. [Alabama Western R. Co. v. Talley-Bates Construction Co., 50 Southern Reporter, 341; Kansas City Structural Steel Co. v. State of Arkansas, supra.]

As to the asserted right to detach the sprinkler system and remove it from the building, it would seem to be clear that by reason of the way it was installed and attached, it became an integral part of the building and cannot be removed therefrom without substantially damaging it as a hotel structure. To remove pipes from one to four inches in diameter leaving gaping holes in the floor, walls and ceiling of every room, would not only work a substantial injury to the premises, but would render the building almost wholly unfit for use as a hotel. No guest would relish "peek-holes" above, below and at the sides of his room. He would be as firmly convinced, though perhaps more vocal about it, as were the immortal six hundred who rode to their death realizing that someone had blundered.

The case of Holt v. Henley, Trustee, 232 U. S. 637, cited and relied upon by plaintiff was of an entirely different kind of a sprinkler system which would involve no injury to the building if removed.

Besides, the rights of the holder of the first deed of trust, now represented by O'Malley, are paramount to any right of removal by the plaintiff, since the lien of said deed of trust is prior to any claimed right of another arising subsequently. [McLeod v. Satterwaith, 109 N. J. Eq. 414.] At any rate we think that, considering the method of attaching the sprinkler and the consequences of removing them, not only would the rights of the prior mortgagee, but the injury to the

312

hotel, prevent its removal. [Dausch v. Ginsburg, 214 Cal. 540.] And the case of General Motors Accept. Corp. v. Farm & Home Savings & Loan Assn., 58 S. W. (2d) 338, is, so far as the equipment held not removable without damage, is concerned it cannot be taken out, in view of the rights of the prior lienholder. In our view, the action of the chancellor in dismissing the suit was proper, should be, and is, affirmed. All concur.